STATE of Wisconsin, Plaintiff-Respondent,

v.

Brian D. ROBINS, Defendant-Appellant.

Supreme Court

*No. 00–2841–CR. Oral argument January 11, 2002.—Decided June 21, 2002.*

2002 WI 65

(Also reported in 646 N.W.2d 287.)

For the defendant-appellant there were briefs by *Craig W. Albee* and *Glynn, Fitzgerald & Albee, S.C.,* Milwaukee, and oral argument by *Craig W. Albee.*

For the plaintiff-respondent the cause was argued by *Jennifer E. Nashold,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general, and *Jeffrey J. Kassel,* assistant attorney general.

¶ 1. DIANE S. SYKES, J. This is a prosecution for

attempted child enticement arising out of an internet "sting" operation by the Department of Justice (DOJ). The primary issue is whether the child enticement statute is violated when there is no actual child victim, but, rather, an adult government agent posing online as a child. The defendant also challenges the sufficiency of the allegations in the complaint and the evidence at the preliminary hearing. Finally, the defendant raises a First Amendment challenge to the statute as applied to child enticements initiated over the internet.

¶ 2. The defendant raised these issues in various motions to dismiss in the Outagamie County Circuit Court. The Honorable Michael W. Gage denied the motions, and the court of appeals granted interlocutory appeal. We accepted the defendant's petition to bypass, and now affirm.

¶ 3. We conclude that an attempted child enticement under Wis. Stat. § 948.07 (1999–2000)[1] may be charged where the intervening extraneous factor that makes the offense an attempted rather than completed crime is the fact that unbeknownst to the defendant, the "victim" is not a child at all, but an adult posing as a child. We further conclude that the allegations in the complaint and the evidence at the preliminary hearing were sufficient to establish probable cause in this case. Finally, because the child enticement statute regulates conduct rather than speech or expression, the First Amendment is not implicated by this prosecution.

I

¶ 4. The defendant Brian Robins was charged with attempted child enticement contrary to Wis.

---

[1] All future references to the Wisconsin Statutes will be to the 1999–2000 version of the statutes unless otherwise indicated.

Stat. § 948.07(1), stemming from a DOJ internet "sting" operation.[2] Beginning on January 31, 2000, Robins, using the screen name "WI4Kink," had a series of online conversations with "Benjm13," initially in an internet chat room known as "Wisconsin M4M."[3] Unbeknownst to Robins, "Benjm13" was Thomas Fassbender, a 42–year-old DOJ agent posing online as a 13–year-old boy named Benjamin living in Little Chute, Wisconsin.

¶ 5. The subject of "Benjamin's" age came up within the first 12 minutes of the first online conversation between Robins and "Benjm13." "Benjamin" told Robins that he was 13 years old.[4] The initial and subsequent online conversations and e-mails between Robins and "Benjm13" centered on explicit sexual matters (including, among other things, oral sex, masturbation, ejaculation, and penis size), and were recorded by Fassbender.[5]

¶ 6. Robins, who was 46 years old and lived in Wauwatosa at the time of the offense, suggested that the two meet:

> WI4kink: So you ever get to Milwaukee?

---

[2] The facts are from the criminal complaint and the preliminary hearing transcript, and are taken as true for purposes of resolving the legal issues on this review.

[3] Testimony at the preliminary hearing showed that "M4M" meant either Male For Male or Men For Men.

[4] Benjm13: ru my age
Benjm13: im 13
WI4kink: no older

[5] Fassbender testified at the preliminary hearing that the DOJ runs a computer program called Power Tools that automatically logs conversation and instant message or chat room conversations and saves these communications. The agent then saves the communications to a disk and prints them off as paper copies.

Benjm13: sometimes withmy [sic] mom

WI4kink: cool so how would we ever meet?

Benjm13: i dont know u can come here if u want

WI4kink: ya that is true

WI4kink: you have a place we could go?

Benjm13: just my house but thats scary

WI4kink: ya it would be, specially [sic] if someone comes home :)

Benjm13: wow not cool

WI4kink: no

Benjm13: i dont know were [sic] to go

WI4kink: could just get a room somewhere

Benjm13: oh that would be cool – like a motel

WI4kink: yup

¶ 7. Robins acknowledged that what he was proposing to do was illegal:

Benjm13: im getting nervus [sic] already

WI4kink: ok I understand well I am a little to [sic] this isn't legal you know

Benjm13: i geus [sic] so

¶ 8. The second online conversation between Robins and "Benjamin" took place the next evening, February 1, 2000. Again it involved mostly sexual topics, and Robins was persistent in setting up a meeting between

the two on the following Saturday. The conversation makes clear that Robins was planning to find a motel room:

> WI4kink: what time of the day would be best? . . .
>
> Benjm13: after i get up would be ok
>
> WI4kink: as far as getting a room that should be like early afternoon

¶ 9. Robins also asked "Benjamin" for his telephone number. "Benjamin" appeared to be reluctant to give it to him. After Robins assured "Benjamin" that he would only use the number to call on Saturday to confirm their meeting, "Benjamin" replied, "ok."

¶ 10. On February 2 and 3, Robins and "Benjamin" "missed" each other online, and instead exchanged e-mail messages. In one e-mail, "Benjamin" informed Robins that he had directions to Little Chute and that they could probably meet at the Burger King just off the highway. Robins e-mailed "Benjamin" and asked him to send the directions. He also told "Benjamin" that he was "still a little nervous" because he "would not want to get scammed." "Benjamin" sent the directions, together with the message, "i'm a little scared to [sic]. u have to promise me not to tell anyone and to be nice ok. my mom would kill me." In another e-mail, Robins advised that he would arrive in Little Chute around noon, but that "Benjamin" should give Robins his telephone number so that Robins could call on Saturday morning with an exact time. Robins closed the e-mail by saying: "I know we must be very carefull. [sic] I am looking forward to it."

¶ 11. On Friday, February 4, 2000, Robins and "Benjamin" met online and engaged in another instant message conversation. This conversation confirmed

305

that the two would meet the following day for the purpose of having sex. Robins expressed his hope that "Benjamin" was "saving" himself for the following day (that is, he hoped "Benjamin" would not masturbate before their meeting) and that he (Robins) was "getting hard just talking to" him ("Benjamin"). Robins again asked Benjamin for his telephone number because Robins "want[ed] to make sure that ["Benjamin" was] serious." Because "Benjamin" appeared to be nervous about Robins calling his house, they decided to meet online again in the morning before Robins made the telephone call.[6]

¶ 12. At a little after 10 a.m. on Saturday, February 5, 2000, Robins and "Benjamin" met online for the fourth and final time. "Benjamin" said he was "exited [sic] about goin to a motel." Robins replied that it "should be hot." "Benjamin" gave Robins his telephone number and they both signed off the internet.

¶ 13. Soon after they signed off, Robins called the number "Benjamin"—Fassbender—had given him. Officer Ray Lee of the Fox Valley Metro Police Department posed as "Benjamin" during the telephone conversation. The conversation was recorded and Fassbender testified at the preliminary hearing that the content of the

---

[6] During the course of the internet correspondence between Robins and "Benjamin," Robins sent four photo file attachments to the "Benjm13" e-mail address. One was a photo of Robins fully clothed. Another purported to be a photo of Robins' penis. The other two photos depicted naked young men masturbating. These e-mails were the subject of additional charges for attempted distribution of harmful materials to a child, contrary to Wis. Stat. §§ 948.11(2)(a) and 939.32(1). These charges were later dismissed on the State's motion, pursuant to this court's decision in *State v. Weidner*, 2000 WI 52, 235 Wis. 2d 306, 611 N.W.2d 684.

telephone conversation consisted mainly of setting the final arrangements for the meeting—what Robins would be wearing, what kind of car Robins would be driving, what "Benjamin" would be wearing and what he looked like. Fassbender testified that "Mr. Robins said, we'll have to find a motel when I get up there, something to that effect."

¶ 14. In the meantime, Fassbender had determined through America Online that the screen name "WI4kink" belonged to Robins. The DOJ set up surveillance outside Robins' home in Wauwautosa. Shortly after Robins' telephone conversation with "Benjamin" on Saturday, February 5, 2000, Robins left his house. He was surveilled from his home to the Burger King in Little Chute. Robins parked in the Burger King parking lot, got out of his car, and was arrested as he walked towards the restaurant.

¶ 15. Robins admitted in a statement to police that he had met "Benjm13" in an internet chat room, that "Benjm13" told Robins that he was a 13–year-old boy, that they'd had sexually explicit conversations, and that Robins had e-mailed sexually explicit materials to "Benjm13". Robins further admitted that he had set up the meeting with "Benjm13" for the purpose of having sex with him. Robins also stated that he had told "Benjm13" that they would go to a motel room for that purpose.

¶ 16. Just before the preliminary hearing, Robins filed a motion to dismiss the complaint for lack of probable cause. Because of the short notice, the motion was not immediately decided. The preliminary hearing was held, and the State's motion for bindover was granted, over Robins' objection.

¶ 17. Following arraignment, Robins moved to dismiss, alleging insufficient evidence to support the

bindover. He also challenged the constitutionality of Wis. Stat. § 948.07 as applied to child enticements initiated over the internet.

¶ 18. The circuit court denied the motions, finding sufficient evidence to establish probable cause and rejecting Robins' constitutional attack on the statute. The circuit court was not persuaded by Robins' argument that the statute as applied here impermissibly infringed First Amendment rights. The circuit court held that the child enticement statute "does not ban expression, but a particular type of conduct involving children that may or may not flow from protected speech."

¶ 19. Robins petitioned the court of appeals for leave to appeal the circuit court's non-final orders, which the court of appeals granted. Robins then petitioned this court for permission to bypass the court of appeals. The State joined in the request, citing the substantial number of pending child enticement prosecutions involving internet "sting" operations in which government agents pose online as children. We granted bypass.

II

¶ 20. The applicability of the child enticement statute to an internet "sting" operation that involves an adult undercover officer posing online as a child is a question of law that we review de novo. *State v. Jensen,* 2000 WI 84, ¶ 12, 236 Wis. 2d 521, 613 N.W.2d 170. The sufficiency of the allegations in the complaint is also a question of law that we review independently, as is the defendant's challenge to the legal sufficiency of the evidence at the preliminary hearing. *In re A.S.,* 2001 WI

48, ¶ 26, 243 Wis. 2d 173, 626 N.W.2d 712; *State v. Williams,* 104 Wis. 2d 15, 21, 310 N.W.2d 601 (1981). In addition, the constitutionality of a statute is determined without deference to the lower courts. *State v. Johnson,* 2001 WI 52, ¶ 10, 243 Wis. 2d 365, 627 N.W.2d 455.

## III

¶ 21. Robins claims that he is being prosecuted for a non-existent crime. He characterizes the charge against him as an "attempt to attempt a crime," or an "attempt to commit a strict liability crime," neither of which, he says, is recognized under Wisconsin law. Alternatively, he argues that because there was no actual child victim, the crime of child enticement was legally impossible and the charge must be dismissed.

¶ 22. Arguments like these have already been specifically rejected by the court of appeals, and rightly so. In *State v. Koenck,* 2001 WI App 93, 242 Wis. 2d 693, 626 N.W.2d 359, the court of appeals was confronted with a factual scenario almost identical to the one presented here. Koenck, using the screen name "dirtboy69," engaged in sexually explicit internet conversations with "Teddie" and "Georgie," who told "dirtboy69" during these online encounters that they were 11–year-old twin sisters. In reality, "Teddie" and "Georgie" were fictional online profiles created by Nancy A.C., a 46–year-old Pennsylvania woman who founded a group known as Internetwatch, an organization that monitors the internet, mainly for purveyors of child pornography.

¶ 23. Eventually, Koenck, who lived in Iowa, made arrangements online to meet "Teddie" and "Georgie" in Brookfield, Wisconsin, for the purpose of having sexual intercourse. He rented a hotel room and arranged to

meet "Teddie" and "Georgie" at a McDonald's restaurant in Brookfield. The Wisconsin DOJ was contacted, and the defendant was arrested when he arrived at the designated meeting place.

¶ 24. Koenck, like Robins, was charged with attempted child enticement contrary to Wis. Stat. § 948.07(1). Like Robins, he promptly moved to dismiss, claiming that the statute required an actual child victim. The court of appeals disagreed.

¶ 25. The court of appeals first noted that the child enticement statute encompasses the completed act of enticement as well as its attempt:

**948.07 Child enticement.** Whoever, *with intent to commit any of the following acts, causes or attempts to cause any child who has not attained the age of 18 years to go into any vehicle, building, room or secluded place* is guilty of a Class BC felony:

(1) Having sexual contact or sexual intercourse with the child in violation of s. 948.02 or s. 948.095.

(2) Causing the child to engage in prostitution.

(3) Exposing a sex organ to the child or causing the child to expose a sex organ in violation of 948.10.

(4) Taking a picture or making an audio recording of the child engaging in sexually explicit conduct.

(5) Causing bodily or mental harm to the child.

(6) Giving or selling to the child a controlled substance or controlled substance analog in violation of ch. 961.

Wis. Stat. § 948.07 (emphasis added); *Koenck,* 2001 WI App 93, ¶ 9. *See also State v. Derango,* 2000 WI 89, ¶¶ 17–19, 236 Wis. 2d 721, 734, 613 N.W.2d 833 (holding that the act of enticement, or attempted enticement, with intent to commit one or more of the enumerated underlying offenses, is the gravamen of the crime, rather than the underlying offense itself).

¶ 26. The court of appeals in *Koenck* noted that when attempted child enticement is charged, the pattern jury instructions call for the addition of the legal definition of "attempt." *Koenck,* 2001 WI App 93, ¶ 17; *see* Wis JI—Criminal 2134, n. 3. An attempt is defined in the statutes as follows:

> An attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if accomplished, would constitute such crime and that the actor does acts toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that the actor formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor.

Wis. Stat. § 939.32(3).

¶ 27. The court of appeals viewed the fact that Koenck's "victims" were fictitious as the "extraneous factor" that intervened to make Koenck's crime an attempted rather than completed act of child enticement:

> Within the contemplation of Wis. Stat. § 948.07, an attempt is complete when the defendant, with intent to commit a crime, takes action in furtherance of such intent and the failure to accomplish the crime is due to a factor beyond his or her control or one unknown to him or her . . . . We conclude that the fictitiousness of the girls constituted an extraneous factor beyond Koenck's control that prevented him from successfully

311

enticing a child for the express purpose of sexual intercourse or contact . . . . Koenck did everything necessary to insure the commission of the crime intended, and his conduct is not excused because of the fortuitous circumstance rendering it impossible to effectuate the intended result . . . .

*Koenck*, 2001 WI App 93, ¶ 28 (citations omitted). The court of appeals concluded that the absence of an actual child victim constituted "an extraneous factor beyond Koenck's control that prevented successful enticement while not excusing the attempt to entice." *Id.* at ¶ 29.

¶ 28. The court of appeals' interpretation of the child enticement statute in *Koenck* was entirely correct, and we reject Robins' argument that the case should be overruled. Here, as in *Koenck,* the extraneous factor that intervened to make the crime an attempted rather than completed child enticement is the fact that "Benjm13" was an adult government agent rather than a 13–year-old boy. That there may be or could have been other intervening factors does not make this an impermissible prosecution for an "attempt to attempt a crime."

¶ 29. Nor is it an impermissible prosecution for an "attempt to commit a strict liability offense," as Robins contends. He cites *State v. Briggs,* 218 Wis. 2d 61, 66, 579 N.W.2d 783 (Ct. App. 1998), in which the court of appeals held that "attempted felony murder" is not a recognized crime. The court noted that "under Wisconsin law, one cannot attempt to commit a crime which does not itself include an element of specific intent." *Id.* at 66. The court concluded that because felony murder does not include an intent element, one cannot "attempt" a felony murder. *Id.*

312

¶ 30. In contrast to felony murder, however, the crime of child enticement *does* contain a mens rea or specific intent element. The child enticement statute is not violated unless the perpetrator committed or attempted the act of enticement with one or more of the specific enumerated prohibited intents, most of which involve sex crimes against children. *See Derango,* 2000 WI 89, ¶¶ 17, 20, and 31. Child enticement is a strict liability offense only in the sense that the State need not prove the defendant's knowledge of the child's minority and the defendant cannot use mistake as to the child's minority as a defense. *See* Wis. Stat. § 939.43(2) ("[a] mistake as to the age of a minor . . . is not a defense"); *see also* Wis. Stat. § 939.23(6) ("[c]riminal intent does not require proof of knowledge of the age of a minor even though age is a material element in the crime"). Accordingly, attempted child enticement is not an "attempt to commit a strict liability crime," impermissible under the rationale of *Briggs.*

¶ 31. Finally, Robins' assertion of the "legal impossibility" defense is foreclosed by the court of appeals' decision in *State v. Kordas,* 191 Wis. 2d 124, 528 N.W.2d 483 (Ct. App. 1995). There, the defendant was charged with attempt to receive stolen property. The charge arose out of an undercover operation in which the police made certain modifications to a Harley-Davidson motorcycle to make it appear as though it was stolen, and passed it off as stolen to the defendant, who allegedly bought it with that understanding and intent. *Id.* at 126. Because the motorcycle was *not* stolen, however, the defendant argued that it was legally impossible for him to have committed the crime of attempt to receive stolen property; the circuit court agreed, and dismissed the complaint. *Id.*

¶ 32. The court of appeals reversed, holding that legal impossibility is not a defense to the crime of attempt:

> [A] defense of legal impossibility is no defense to an *attempt* to commit a crime, absent the defendant's "mistake." Section 939.43(1), STATS., defines the defense of "mistake":
>
>> An honest error, whether of fact or of law other than the criminal law, is a defense if it negatives the existence of a state of mind essential to the crime.
>
> (Emphasis added.) Therefore, a fact of which a defendant has no knowledge, such as the fact that an apparently stolen motorcycle is *not* stolen, cannot form the basis for the defense of mistake. As the supreme court explained, "[s]ound public policy" supports the view that:
>
>> impossibility not apparent to the actor should not absolve him from the offense of attempt to commit the crime he intended . . . . In so far as the actor knows, he has done everything necessary to insure the commission of the crime intended, and he should not escape punishment because of the fortuitous circumstance that by reason of some fact unknown to him it was impossible to effectuate the intended result.
>
> *State v. Damms,* 9 Wis. 2d 183, 190–91, 100 N.W.2d 592, 596 (1960)(impossibility for defendant to commit murder because gun was not loaded did not preclude conviction for *attempted* murder where defendant intended to kill and believed gun was loaded).

*Id.* at 129–30.

¶ 33. *Kordas* controls here. Robins tries to distinguish it by reverting to his argument that child enticement is a strict liability offense, making the defendant's state of mind about the age of the victim irrelevant and the rationale of *Kordas* inapplicable. But the defendant's state of mind is *not* irrelevant in a child enticement prosecution. Indeed, as we have noted above, the State must prove that the defendant possessed one or more of the prohibited intents itemized in the statute (here, intent to commit a second-degree sexual assault of a child) before it can convict on either a completed or attempted child enticement. That the State need not prove the defendant's knowledge of the child's minority and the defendant cannot assert mistake as to the child's minority as a defense does not take this statute outside the holding of *Kordas*.[7]

¶ 34. We conclude, then, pursuant to *Koenck* and *Kordas*, that the crime of attempted child enticement

---

[7] Robins also claims *State v. Smith*, 202 Wis. 2d 21, 549 N.W.2d 232 (1996) requires dismissal of the charge against him. *Smith* involved a charge of second-degree sexual assault (by use or threat of force) of a 16–year-old girl. Pursuant to plea negotiations, the defendant entered an *Alford*–plea to a reduced charge of child enticement contrary to Wis. Stat. § 948.07(1). *Id.* at 23–24. This court reversed. Child enticement under Wis. Stat. § 948.07(1) is predicated on intent to commit a first- or second-degree sexual assault of a child, which requires the victim to be under 13 and 16 years of age, respectively. *See* Wis. Stat. § 948.02(1) and (2). Since the victim was 16 years old, the defendant could not legally be convicted of child enticement under that subsection of the statute. *Id.* at 28. *Smith*, however, concerned a conviction for a *completed* act of child enticement, not an attempted child enticement. Accordingly, *Smith* has no application here.

contrary to Wis. Stat. § 948.07 may be charged where the extraneous factor that intervenes to make the crime an attempted rather than completed child enticement is the fact that, unbeknownst to the defendant, the "child" is fictitious.

## IV

¶ 35. Robins also claims the allegations in the criminal complaint and the evidence adduced at the preliminary hearing are insufficient to establish probable cause. At most, he says, the evidence establishes "mere preparation" to commit a crime or "an appointment" with a potential victim, neither of which is legally sufficient to support a probable cause finding.

¶ 36. We have held that the crime of attempt has two elements: "(1) an intent to commit the crime charged; and (2) sufficient acts in furtherance of the criminal intent to demonstrate unequivocally that it was improbable the accused would desist from the crime of his or her own free will." *State v. Stewart,* 143 Wis. 2d 28, 34, 420 N.W.2d 44 (1988). While it is unquestionably true that "[t]he law does not ordinarily punish a person for guilty intentions alone," the law of attempt does not punish guilty intentions but "acts that further the criminal objective." *Id.* at 37.

¶ 37. The crime of attempt is complete when the intent to commit the underlying crime is coupled with sufficient acts to demonstrate the improbability of free will desistance; the actual intervention of an extraneous factor is not a "third element" of the crime of attempt, although it is often part of the proof. *See id.* at 39–42; *see also, Hamiel v. State,* 92 Wis. 2d 656, 662–68, 285 N.W.2d 639 (1979). There is no statutory defense of

316

voluntary abandonment once an attempt is completed, and this court has declined to create such a defense at common law. *Stewart,* 143 Wis. 2d at 45–46.

¶ 38. The allegations in the complaint and the evidence elicited at the preliminary hearing are more than sufficient to establish probable cause for the crime of attempted child enticement under the test articulated in *Stewart.* The complaint and preliminary hearing establish that the defendant engaged in sexually-explicit online "chats" and e-mails with a person he thought was a 13–year-old boy, for the express purpose of illegally soliciting that boy for sex; that he arranged a meeting time and place to effectuate that purpose; and that he traveled to and arrived at the agreed-upon meeting place, where he was arrested. These allegations easily establish probable cause to believe that Robins attempted the crime of felony child enticement; that is, that he possessed the intent to entice a child for sexual intercourse and that he engaged in unequivocal acts in furtherance of that criminal objective such that it was improbable that he would desist of his own free will.

V

¶ 39. Finally, Robins raises a First Amendment[8] challenge to Wis. Stat. § 948.07 as applied to child

---

[8] The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." Although Robins does not assert a separate state constitutional claim, we note that Article I, section 3 of the Wisconsin

enticements initiated over the internet, citing our decisions in *State v. Weidner,* 2000 WI 52, 235 Wis. 2d 306, 611 N.W.2d 684, and *State v. Zarnke,* 224 Wis. 2d 116, 589 N.W.2d 370 (1999). Both *Weidner* and *Zarnke,* however, involved First Amendment challenges to variable obscenity statutes, and their holdings are therefore inapplicable here.

¶ 40. In *Weidner,* the defendant challenged Wis. Stat. § 948.11(2), which prohibits the transfer, sale or exhibition of harmful (generally, sexually explicit) material to a child, as applied to internet transfers of sexually explicit material. *Weidner,* 2000 WI 52, ¶¶ 8–9. In *Zarnke,* the defendant challenged Wis. Stat. § 948.05, which generally prohibits the sale or distribution of child pornography. *Zarnke,* 224 Wis. 2d at 121–22. Both statutes imposed a form of strict liability, in that the State was not required to prove the defendant's knowledge of the victim's age. *Weidner,* 2000 WI 52, ¶ 12; *Zarnke,* 224 Wis. 2d at 123–24. Because the distribution of non-obscene, sexually explicit material to adults and the distribution of non-obscene, sexually explicit material depicting adults are protected by the First Amendment, this court held that the lack of a knowledge requirement as to the victim's age rendered the statutes unconstitutional under the First Amendment. *Weidner,* 2000 WI 52, ¶ 37; *Zarnke,* 224 Wis. 2d at 132–33.

¶ 41. In contrast to the statutes invalidated in *Weidner* and *Zarnke,* the child enticement statute at issue here is not a variable obscenity statute, nor does it

Constitution also provides a fundamental right to freedom of speech: "Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right, and no laws shall be passed to restrain or abridge the liberty of speech or of the press. . . ."

regulate speech or expression, either on its face or as applied to child enticements initiated over the internet. The United States Supreme Court has rejected the contention that the First Amendment extends to speech that is incidental to or part of a course of criminal conduct. *Giboney v. Empire Storage,* 336 U.S. 490, 498 (1949) ("It rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute. We reject the contention now.").

¶ 42. It is not "an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Id.* at 502 (citing *Fox v. Washington,* 236 U.S. 273, 277 (1915), and *Chaplinsky v. New Hampshire,* 315 U.S. 568 (1942)).[9] Given today's technology, we would add electronic language to this list.

¶ 43. The child enticement statute regulates conduct, not speech.[10] The statute protects against the

---

[9] *See also State v. Mitchell,* 169 Wis. 2d 153, 181, 485 N.W.2d 807 (1992), (Abrahamson, J., dissenting) *rev'd by Wisconsin v. Mitchell,* 508 U.S. 476 (1993) ("Bigots are free to think and express themselves as they wish, except that they may not engage in criminal conduct in furtherance of their beliefs.").

[10] *City of Madison v. Schultz,* 98 Wis. 2d 188, 295 N.W.2d 798 (Ct. App. 1980) provides an example of the distinction between speech and conduct in a First Amendment challenge. There, the court of appeals held that First Amendment rights were not implicated by an ordinance that prohibited naked genital massage in commercial massage establishments. The

319

social evil and grave threat presented by those who lure or attempt to lure children into secluded places, away from the protection of the general public, for illicit sexual or other improper purposes. *Derango,* 2000 WI 89, ¶¶ 17–19. That an act of child enticement is initiated or carried out in part by means of language does not make the child enticement statute susceptible of First Amendment scrutiny.[11]

¶ 44. Robins' internet conversations and e-mails with "Benjm13" do not by themselves constitute the crime of child enticement. Rather, Robins' internet conversation and e-mails are circumstantial evidence of his intent to entice a child, which, combined with his

---

court said: "We agree with the United States Supreme Court's statement in *United States v. O'Brien,* 391 U.S. 367, 376 (1968), that '[w]e cannot accept the view that an apparently limitless variety of conduct can be labeled as 'speech' whenever the person engaging in the conduct intends thereby to express an idea.' The only idea expressed by the masseuse was her willingness to take her clothes off to enhance the sexual experience of the paying patron . . . . [A] masseuse's actions in disrobing do not constitute 'speech' which the first amendment protects." *City of Madison v. Schultz,* 98 Wis. 2d at 203.

[11] *See, e.g., Mitchell,* 169 Wis. 2d at 189, (Bablitch, J., dissenting):

> However, if words are used to prove the crime, the words uttered are not the subject of the statutory prohibition; rather, they are used only as circumstantial evidence to prove the intentional selection. Permitting the use of such evidence does not chill free speech . . . words of defendants are frequently used to prove the element of intent in many crimes without violating the First Amendment . . . It is no more a chilling of free speech to allow words to prove the act of intentional selection [an element of the crime] in this "intentional selection" statute than it is to allow a defendant's words that he "hated John Smith and wished he were dead" to prove a defendant intentionally murdered John Smith.

actions in furtherance of that intent, constitute probable cause for the crime of attempted child enticement. That some of the proof in this case consists of internet "speech" does not mean that this prosecution, or another like it, implicates First Amendment rights. Simply put, the First Amendment does not protect child enticements, whether initiated over the internet or otherwise.[12]

---

[12] For examples of cases which come to a similar conclusion, see *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000)("Defendant simply does not have a First Amendment right to attempt to persuade minors to engage in illegal sex acts"); *United States v. Powell*, 1 F.Supp. 2d 1419, 1422 (N.D. Ala. 1998) ("[t]he court finds it difficult to ascertain how the First Amendment is violated by a law that prohibits an individual from attempting to knowingly persuade, induce, and entice a person under eighteen years of age to engage in an illegal sexual act."); *New York v. Foley*, 731 N.E.2d 123, 132 (N.Y. 2000)("courts have recognized that speech used to further the sexual exploitation of children does not enjoy constitutional protection"). *See also United States v. DeBeir*, 186 F.3d 561 (4th Cir. 1999)(upholding the defendant's conviction under a comparable federal statute, 18 U.S.C.A. § 2423(b), in a fact scenario similar to that presented here); *United States v. Farner*, 251 F.3d 510 (5th Cir. 2001)(upholding the defendant's conviction under 18 U.S.C.A. 2422(b) for attempting to entice a minor to engage in criminal sexual acts when the "minor" was an adult undercover agent); *Thibeault v. Florida*, 732 So. 2d 28 (Fla. Dist. Ct. App. 1999)(upholding the defendant's conviction for attempted child enticement via the internet when the minor child was an adult deputy sheriff posing as a minor child); *Hudson v. Florida*, 745 So. 2d 997 (Fla. Dist. Ct. App. 1999)(affirming the conviction of a defendant who attempted child enticement by writing letters to a "child" who was actually an adult law enforcement officer); *Illinois v. Patterson*, 734 N.E.2d 462 (Ill. App. Ct. 2000)(affirming the conviction of a defendant who attempted to induce a child into sexual acts using the internet when the child

¶ 45. Accordingly, we conclude that the offense of attempted child enticement under Wis. Stat. § 948.07 may be charged where the intervening extraneous factor that makes the offense an attempted rather than completed crime is the fact that unbeknownst to the defendant, the "victim" is not an actual child, but, rather, an adult government agent posing as a child. We also conclude that the allegations in the complaint and the evidence adduced at the preliminary hearing are sufficient to establish probable cause in that they establish, to the requisite degree, that Robins intended to commit the crime of child enticement and would have done so but for the intervention of an extraneous factor. Finally, we conclude that the First Amendment is not implicated by the application of the child enticement statute to child enticements initiated over the internet, because the statute regulates conduct, not speech. Therefore, we affirm the circuit court's order denying the defendant's motions to dismiss, and remand for further proceedings.

*By the Court.*—The order of the Outagamie County Circuit Court is affirmed and cause remanded.

---

was an adult detective); *Attorney Grievance Commission of Maryland v. Childress,* 770 A.2d 685 (Md. 2001)(suspending indefinitely the law license of an attorney who engaged in acts which equated to enticement of a child via the internet, where the "child" was an FBI agent); *In re Harlow,* 280 A.D.2d 870 (N.Y. App. Div. 2001)(disbarring an attorney after he was convicted of enticing an actual child over the internet); *Chen v. Texas,* 42 S.W.3d 926 (Tex. Crim. App. 2001) (affirming the defendant's conviction for attempted child enticement using the internet when the child was an undercover officer).