STATE of Wisconsin, Plaintiff-Appellant,

v.

Gary M. HEMMINGWAY, Defendant-Respondent.†

Court of Appeals

*No. 2011AP2372–CR. Submitted on briefs August 31, 2012.
—Decided November 7, 2012.*

2012 WI App 133

(Also reported in 825 N.W.2d 303.)

† Petition for Review Filed.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Daniel J. O'Brien*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Gerard F. Kuchler* and *Bradley J. Bloch* of *Racine Avenue Law Offices*, Waukesha.

Before Brown, C.J., Neubauer, P.J., and Reilly, J.

¶ 1. NEUBAUER, P.J. The State of Wisconsin appeals from an order dismissing its complaint against

Gary M. Hemmingway for stalking with a previous conviction of a violent crime, WIS. STAT. § 940.32(2m)(a) (2009–10).[1] Hemmingway challenged the statute as a facially overbroad regulation of protected speech, in violation of the First and Fourteenth Amendments to the United States Constitution. The circuit court agreed with Hemmingway, ruling that the statute was substantially overbroad in violation of the First Amendment. The circuit court granted Hemmingway's motion to dismiss. We reverse. The First Amendment does not protect intentional conduct designed to cause serious emotional distress or fear of bodily harm or death in a targeted victim.

## BACKGROUND

¶ 2. Hemmingway was charged with stalking with a previous conviction of a violent crime based on his alleged ongoing and intimidating text messages, phones calls and e-mails to his ex-wife, Rebecca.[2] According to the complaint, Hemmingway's attempts to communicate with Rebecca threatened and upset her. The complaint detailed some of the communications, including Hemmingway allegedly telling Rebecca that he would "blow his brains out" and make a mess of her kitchen and that "God forgives you for everything, even murder." Hemmingway told Rebecca, as alleged in the complaint, "that he would love to see someone holding a

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

[2] Regarding the element that Hemmingway had a previous conviction for a violent crime, a 1999 certified judgment of conviction for substantial battery with intended bodily harm, WIS. STAT. § 940.19(2), was attached to the amended complaint. The complaint also alleges that Hemmingway was convicted in 2008 of disorderly conduct involving Rebecca.

gun to her and for her to be begging for her life." The complaint says that he told her the only way she could feel his pain would be if both her sons died at the same time. Rebecca stated that she believed Hemmingway had a firearm and that during a 2008 domestic abuse incident he had told her, "I have not killed anyone in a long time. I don't know who's going to be first, you or me." Rebecca indicated that Hemmingway's actions had caused her to suffer serious emotional distress and that she "fears bodily injury and death either to herself or to a member of her family." Rebecca's "significant fear of harm or death" was compounded by her knowledge of Hemmingway's past violent crimes, including aggravated battery and negligent use of a dangerous weapon.

¶ 3. Hemmingway moved to dismiss, asserting that all of the alleged communications from him to Rebecca were, among other things, protected under the First and Fourteenth Amendments. The circuit court agreed with Hemmingway that the statute was overly broad and dismissed the complaint.

## DISCUSSION

### The Stalking Statute

¶ 4. This court has upheld the stalking statute against an overbreadth and vagueness constitutional challenge based on the right to travel and equal protection. *State v. Ruesch*, 214 Wis. 2d 548, 571 N.W.2d 898 (Ct. App. 1997). The court discussed the purpose behind the stalking statute.

> Wisconsin is one of many states that has enacted a stalking law. It serves significant and substantial state interests by providing law enforcement officials with a means of intervention in potentially dangerous situa-

301

tions before actual violence occurs, and it enables citizens to protect themselves from recurring intimidation, fear-provoking conduct and physical violence.

*Id.* at 559 (footnote omitted). The court noted that, unlike forms of speech that have a history of constitutional protection, like picketing, "stalking provides no social benefit, but instead contributes to fear and violence." *Id.* at 565. Finally, Ruesch's constitutional challenge "completely ignore[d] [the victim's] rights, which certainly must figure in the balance of an ordered society." *Id.* at 562–63.

¶ 5. Here, we have another overbreadth challenge to the stalking statute, but this one is based on the First Amendment right to free speech. The statute itself, WIS. STAT. § 940.32, provides, in part:

(2) Whoever meets all of the following criteria is guilty of a Class I felony:

(a) The actor intentionally engages in a course of conduct directed at a specific person that would cause a reasonable person under the same circumstances to suffer serious emotional distress or to fear bodily injury to or the death of himself or herself or a member of his or her family or household.

(b) The actor knows or should know that at least one of the acts that constitute the course of conduct will cause the specific person to suffer serious emotional distress or place the specific person in reasonable fear of bodily injury to or the death of himself or herself or a member of his or her family or household.

(c) The actor's acts cause the specific person to suffer serious emotional distress or induce fear in the specific person of bodily injury to or the death of himself or herself or a member of his or her family or household.

302

. . . .

**(2m)** Whoever violates sub. (2) is guilty of a Class H felony if any of the following applies:

(a) The actor has a previous conviction for a violent crime, as defined in [§] 939.632(1)(e)1., or a previous conviction under this section or [§] 947.013(1r), (1t), (1v) or (1x).

¶ 6. In order to obtain a stalking conviction, the State must prove that a defendant intentionally engaged in a course of conduct directed at a specific person. A "course of conduct" is defined as "a series of 2 or more acts carried out over time, however short or long, that show a continuity of purpose." WIS. STAT. § 940.32(1)(a). The statute lists eleven acts that can form the basis of a course of conduct.[3] These acts, in

---

[3] WISCONSIN STAT. § 940.32(1)(a) provides:

(a) "Course of conduct" means a series of 2 or more acts carried out over time, however short or long, that show a continuity of purpose, including any of the following:

1. Maintaining a visual or physical proximity to the victim.

2. Approaching or confronting the victim.

3. Appearing at the victim's workplace or contacting the victim's employer or coworkers.

4. Appearing at the victim's home or contacting the victim's neighbors.

5. Entering property owned, leased, or occupied by the victim.

6. Contacting the victim by telephone or causing the victim's telephone or any other person's telephone to ring repeatedly or continuously, regardless of whether a conversation ensues.

6m. Photographing, videotaping, audiotaping, or, through any other electronic means, monitoring or recording the activities of the victim. This subdivision applies regardless of where the act occurs.

and of themselves, are not crimes. These are legitimate acts which could become part of the stalking course of conduct if they show a continuity of purpose and satisfy the elements of the crime.

■

¶ 7. The course of conduct must be such as would cause a reasonable person to suffer serious emotional distress or to fear bodily injury or death. This objective "reasonable person" standard requires the jury to determine the effect the course of conduct would have on a person of ordinary intelligence and prudence in the position of the intended victim under the circumstances that existed at the time of the course of conduct. "Suffer serious emotional distress" means "to feel terrified, intimidated, threatened, harassed, or tormented." Wis. Stat. § 940.32(1)(d).

■

¶ 8. The State must prove that the defendant had knowledge, either actual or imputed, that such fear would result from at least one of the acts constituting the course of conduct. The State must also prove that

---

7. Sending material by any means to the victim or, for the purpose of obtaining information about, disseminating information about, or communicating with the victim, to a member of the victim's family or household or an employer, coworker, or friend of the victim.

8. Placing an object on or delivering an object to property owned, leased, or occupied by the victim.

9. Delivering an object to a member of the victim's family or household or an employer, coworker, or friend of the victim or placing an object on, or delivering an object to, property owned, leased, or occupied by such a person with the intent that the object be delivered to the victim.

10. Causing a person to engage in any of the acts described in subds. 1. to 9.

the perpetrator's acts actually did cause the victim to suffer serious emotional distress or fear of bodily injury or death. These provisions make both the stalker's as well as the victim's mental state an element of the crime. This is crucial to narrow application of the statute from what would be otherwise legitimate behavior to only behavior that is intended to and does actually cause the victim to feel terrified, intimidated, threatened, harassed, or tormented, or to fear bodily injury or death. *State v. Warbelton*, 2009 WI 6, ¶ 36, 315 Wis. 2d 253, 759 N.W.2d 557; *see also Ruesch*, 214 Wis. 2d at 563 ("[T]the element of intent significantly vitiates a claim that Ruesch (or any other defendant) was (or would be) misled about what conduct was proscribed.").

¶ 9. In sum, to obtain a stalking conviction, the State must prove that Hemmingway intentionally engaged in a course of conduct directed at his ex-wife that he knows (or should know) will instill fear in her, does instill fear in her, and would instill such fear in a reasonable person under similar circumstances.

*First Amendment Overbreadth Challenge*

¶ 10. The First Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides that "Congress shall make no law . . . abridging the freedom of speech." *State v. Robert T.*, 2008 WI App 22, ¶ 6, 307 Wis. 2d 488, 746 N.W.2d 564 (citation omitted). Article I, § 3 of the Wisconsin Constitution, though worded differently, provides a parallel guarantee of free speech. *Robert T.*, 307 Wis. 2d 488, ¶ 6. The constitutionality of a statute is a question of law we review de novo. *Id.*, ¶ 5.

¶ 11. A statute may be challenged on its face as overbroad even by a party whose conduct is clearly unprotected if the statute infringes on a substantial amount of speech or expressive conduct protected by the First Amendment. *New York v. Ferber*, 458 U.S. 747, 769 (1982); *Robert T.*, 307 Wis. 2d 488, ¶ 7. Finding a statute overbroad is "strong medicine" and should not be done lightly. *Robert T.*, 307 Wis. 2d 488, ¶ 7 (citation omitted). In order for a statute to be invalidated, the overbreadth must be substantial, not only in an absolute sense, but as judged in relation to the statute's legitimate sweep. *United States v. Williams*, 553 U.S. 285, 292 (2008). The party challenging a statute as overbroad has the burden to show substantial overbreadth. *Virginia v. Hicks*, 539 U.S. 113, 122 (2003).

¶ 12. There are several steps in the overbreadth analysis. First, as a threshold matter, we must determine if the First Amendment applies to the case, so as to trigger constitutional scrutiny. *State v. Baron*, 2009 WI 58, ¶ 16, 318 Wis. 2d 60, 769 N.W.2d 34; *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 294 n.5 (1984). The challenger has the initial burden of showing that the statute regulates protected speech, thus implicating the First Amendment. *See State v. Mitchell*, 163 Wis. 2d 652, 663–64, 473 N.W.2d 1 (Ct. App. 1991), *rev'd*, 169 Wis. 2d 153, 485 N.W.2d 807 (1992), *rev'd, Wisconsin v. Mitchell*, 508 U.S. 476 (1993), *Ct. App. decision aff'd*, 178 Wis. 2d 597, 598, 504 N.W.2d 610 (1993); *Clark*, 468 U.S. at 295 n.5. If the subject matter of the statute is conduct, the First Amendment does not come into play. *Baron*, 318 Wis. 2d 60, ¶ 14; *see also Mitchell*, 163 Wis. 2d at 664. The First Amendment does not protect an illegal course of conduct

"merely because the conduct was in part initiated, evidenced, or carried out by means of language." *State v. Robins*, 2002 WI 65, ¶ 42, 253 Wis. 2d 298, 646 N.W.2d 287 (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949)). Finally, only if the statute substantially prohibits protected speech, we analyze the statute's sweep under strict or intermediate scrutiny, depending on whether the regulation is content based or content neutral. *Baron*, 318 Wis. 2d 60, ¶ 31.

¶ 13. Our first question is whether the stalking statute regulates speech as well as conduct, or merely conduct. *Robins* analyzed the speech versus conduct question in the context of Wisconsin's child enticement statute. Robins struck up an internet relationship with a person he thought was a thirteen-year-old boy. *Robins*, 253 Wis. 2d 298, ¶ 4. After several online communications, some sexual in nature, Robins set up a meeting with the supposed teen, making it clear he intended to rent a hotel room so that they could have a sexual encounter. *Id.*, ¶¶ 5–8. When Robins showed up to meet the boy, he was arrested. *Id.*, ¶ 14. Robins had been communicating with a forty-two-year-old department of justice agent, not a thirteen-year-old boy. *Id.*, ¶ 4. Robins was charged with child enticement, Wis. Stat. § 948.07, and challenged the statute on, among other things, First Amendment grounds. *Id.*, ¶ 39. The threshold question on the First Amendment issue was whether the statute regulated speech or conduct. *Id.*, ¶ 41. The *Robins* court held that the statute did not regulate speech, "either on its face or as applied to child enticements initiated over the internet." *Id.*

The United States Supreme Court has rejected the contention that the First Amendment extends to

307

speech that is incidental to or part of a course of criminal conduct. *Giboney v. Empire Storage*, 336 U.S. 490, 498 (1949) ("It rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute. We reject the contention now.").

*Robins*, 253 Wis. 2d 298, ¶ 41. In concluding that the statute did not trigger First Amendment analysis, the court stated: "That an act of child enticement is initiated or carried out in part by means of language does not make the child enticement statute susceptible of First Amendment scrutiny." *Id.*, ¶ 43. Robins' internet conversations themselves did not constitute the crime of child enticement. *Id.*, ¶ 44. Rather, the conversations were "circumstantial evidence of his intent to entice a child, which, combined with his actions in furtherance of that intent, constitute probable cause for the crime of attempted child enticement." *Id.*

¶ 14. Similarly, in *Mitchell*, the court was asked to decide whether the hate crime penalty enhancer based on a defendant's intentional selection of a victim based on race regulated speech or conduct. Mitchell argued that the statute violated his First Amendment right to free speech. *Mitchell*, 163 Wis. 2d at 663. This court, and ultimately the United States Supreme Court, rejected Mitchell's argument, concluding that the statute punished conduct, not speech.

> The statute is directed at the action of selecting a victim and not at speech. [The statute] does not impede or punish the right of persons to express themselves regarding race or any other status or group listed. Words, or even beliefs, are not punished here. What *is* punished is conduct. The words used by a defendant are merely circumstantial evidence that the defendant specially selected the victim because of race or for other reasons listed.

308

*Id.* at 664. As Justice Bablitch expressed in his dissent to the Wisconsin Supreme Court's reversing of the court of appeal's decision in *Mitchell* (which was later affirmed by Wisconsin Supreme Court order, 178 Wis. 2d at 598):

> [I]f words are used to prove the crime, the words uttered are not the subject of the statutory prohibition; rather, they are used only as circumstantial evidence to prove the intentional selection. Permitting the use of such evidence does not chill free speech ... words of defendants are frequently used to prove the element of intent in many crimes without violating the First Amendment .... It is no more a chilling of free speech to allow words to prove the act of intentional selection [an element of the crime] in this "intentional selection" statute than it is to allow a defendant's words that he [or she] "hated John Smith and wished he were dead" to prove a defendant intentionally murdered John Smith.

*Mitchell*, 169 Wis. 2d at 189 (Bablitch, J., dissenting), *quoted in Robins*, 253 Wis. 2d 298, ¶ 43 n.11.

¶ 15. Keeping these principles in mind, we turn to Hemmingway's case. Hemmingway argues that the statute regulates speech and expressive conduct, and therefore triggers First Amendment scrutiny. As we read Hemmingway's argument, he contends that the enumerated examples of prohibited conduct are too broad because "the statute sweeps within every 'course of conduct' element 164 distinct types of acts which can be repeated unlimited numbers of times."

¶ 16. Like the communications in *Robins*, the actions prohibited by WIS. STAT. § 940.32 are conduct, not speech. Like the child enticer in *Robins*, the stalker may use language in his or her commission of the proscribed acts. The use of the language is not against the law. What is against the law is the intentional course of conduct to inflict harm, which the language shows. In *Robins*,

309

internet communications were evidence of Robins' intent and scheme to lure a child into a secluded place, contrary to the child enticement statute. *Robins*, 253 Wis. 2d 298, ¶ 44. In this case, the communications associated with the acts of contacting the victim by telephone and sending messages and e-mails were evidence of Hemmingway's intent to cause Rebecca to fear bodily injury or death, contrary to the stalking statute. Sec. 940.32(2). Such intimidating conduct serves no legitimate purpose and merits no First Amendment protection. "There is no appreciable amount of protected speech where the speaker both intends to cause intimidation, abuse, damage to property, or fear of physical harm or property damage, and does in fact cause one of these alternatives." *O'Brien v. Borowski*, 961 N.E.2d 547, 558 (Mass. 2012). Hemmingway's speech is incidental to and evidence of his intent to engage in a course of conduct that he knew or should have known would instill fear of violence in Rebecca. Such stalking conduct does not trigger First Amendment scrutiny or protection.

¶ 17. Numerous other jurisdictions have upheld stalking statutes like Wisconsin's.[4] *See, generally,* Beth

[4] Like we do, other states have upheld stalking statutes on the ground that the regulated conduct does not trigger First Amendment protection and attendant analysis under intermediate or strict constitutional scrutiny. *See, e.g., United States v. Bowker*, 372 F.3d 365, 378–80 (6th Cir. 2004), *vacated on other grounds,* 543 U.S. 1182 (2005); *Staley v. Jones*, 239 F.3d 769, 784–88 (6th Cir. 2001); *People v. Borrelli*, 91 Cal. Rptr. 2d 851, 857–60 (Cal. Ct. App. 2000); *People v. Baer*, 973 P.2d 1225, 1231–32 (Colo. 1999); *People v. Richardson*, 181 P.3d 340, 344 (Colo. Ct. App. 2007); *Bouters v. State*, 659 So.2d 235, 237 (Fla. 1995) ("Stalking, whether by word or deed, falls outside the First Amendment's purview."); *Fly v. State*, 494 S.E.2d 95, 98 (Ga. Ct. App. 1997); *Smith v. Martens*, 106 P.3d 28, 37–39 (Kan. 2005); *Galloway v. State*, 781 A.2d 851, 874–80 (Md. 2001);

310

Bjerregaard, *Stalking and the First Amendment: A Constitutional Analysis of State Stalking Laws,* 32 CRIM. L. BULL. 307 (1996). For example, in *People v. Bailey,* 657 N.E.2d 953 (Ill. 1995), the defendant challenged Illinois' stalking statute for overbreadth under the First Amendment. *Id.* at 961. The Illinois Supreme Court noted that the first step was to determine whether the statute reached constitutionally protected speech. *See id.* In deciding that the stalking statute did not impinge on protected speech, the court relied on the statute's requirement that the state prove that the defendant threatened the victim with the intent to cause fear. *Id.* In conclusion, the court stated: "While the offense of stalking does contain an element of speech, this speech does not fall within the protections of the first amendment. 'Where speech is an integral part of unlawful conduct, it has no constitutional protection.' " *Id.* at 961–62 (citation omitted).

## CONCLUSION

¶ 18. The stalking statute, WIS. STAT. § 940.32, is not overbroad under the First Amendment. Although a stalker might use language in committing the crime, the core of the statute is the stalker's intent to engage in conduct that he or she knows or should know will cause fear in the victim and does cause the victim's

*People v. White,* 536 N.W.2d 876, 883 (Mich. Ct. App. 1995); *State v. Stockwell,* 770 N.W.2d 533, 539 (Minn. Ct. App. 2009); *State v. Cooney,* 894 P.2d 303, 307 (Mont. 1995); *People v. Brown,* 786 N.Y.S.2d 592, 593 (N.Y. App. Div. 2004); *People v. Shack,* 658 N.E.2d 706, 710–12 (N.Y. 1995); *People v. Wong,* 776 N.Y.S.2d 194, 196–97 (N.Y. Crim. Ct. 2004); *State v. Smith,* 709 N.E.2d 1245, 1256 (Ohio Ct. App. 1998); *State v. Rangel,* 977 P.2d 379, 382–87 (Or. 1999); *State v. Asmussen,* 668 N.W.2d 725, 730–31 (S.D. 2003).

actual distress or fear. Because the language used by Hemmingway in stalking Rebecca was merely evidence of his crime and not prohibited in and of itself, we reverse the circuit court's dismissal of the complaint and remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded for further proceedings.