STATE of Wisconsin, Plaintiff-Appellant,

v.

Christopher BARON, Defendant-Respondent.†

Court of Appeals

*No. 2007AP1289–CR. Submitted on briefs December 7, 2007.
—Decided May 29, 2008.*

2008 WI App 90

(Also reported in 754 N.W.2d 175.)

† Petition to review granted 7/28/08.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jeffrey J. Kassel*, assistant attorney general, and *J.B. Van Hollen*, Attorney General.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Daniel P. Dunn* and *Cole Daniel Ruby* of *Dunn Law Offices*, Madison.

Before Dykman, Vergeront and Bridge, JJ.

¶ 1. BRIDGE, J. This case involves the application of Wisconsin's identity theft statute to a person who misappropriates the identity of a public official. The circuit court ruled that the identity theft statute, WIS. STAT. § 943.201(2)(c) (2005–06),[1] which in part prohibits the unauthorized use of a person's identity for

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

---

the purpose of harming an individual's reputation, is unconstitutional as applied in the present case. The court reasoned that because the person whose identity Christopher Baron misappropriated was a public official, application of the identity theft statute violated Baron's First Amendment right to defame a public official with true information. We conclude that the identity theft statute does not criminalize the act of defaming a public official, and therefore does not violate Baron's First Amendment rights. Accordingly, we reverse.

## BACKGROUND

¶ 2. Christopher Baron worked as an Emergency Medical Technician (EMT) for the City of Jefferson. His boss, Mark Fisher, was the director of Jefferson's Emergency Medical Service (EMS) program. The criminal complaint against Baron alleges that he hacked into Fisher's work computer and sent emails he found in Fisher's email account to about ten people. The forwarded emails purported to have come from Fisher.

¶ 3. The forwarded emails were originally sent from Fisher to a female EMT, and suggested that Fisher was having an extramarital affair. The content of the emails consisted primarily of sexual innuendoes between Fisher and the female EMT, as well as attempts to set up meetings to engage in the affair. The emails also indicated that Fisher was using an apartment owned by the EMS Department to conduct the affair. Baron sent the emails to various local and county EMS workers, as well as to Fisher's wife. The day after Baron sent the emails, Fisher committed suicide.

¶ 4. Baron admitted to investigators that he had sent the emails and that he had done so to get Fisher in trouble. He stated that he knew Fisher's password

because he had helped Fisher with Fisher's computer. Baron told investigators that he used his personal computer at his home to access Fisher's work computer. Baron "blinded" the emails so that it would not be possible to determine who had actually sent them. He said that he originally intended to send the emails only to Fisher's wife, but then decided to send them to other people so they could see that Fisher was not "golden."

¶ 5. Baron was charged with six counts: criminal defamation in violation of WIS. STAT. § 942.01(1); two counts of obstructing an officer in violation of WIS. STAT. § 946.41(1); identity theft in violation of WIS. STAT. § 943.201(2)(c); and two counts of computer crimes in violation of WIS. STAT. § 943.70(2). The State voluntarily dismissed the criminal defamation charge.

¶ 6. Baron then filed a motion to dismiss the identity theft charge on the ground that the identity theft statute is unconstitutional as applied to his conduct. The circuit court granted the motion. The State appeals.

## STANDARD OF REVIEW

¶ 7. The constitutionality of a statute is a question of law, which we review de novo. *State v. Zarnke*, 224 Wis. 2d 116, 124, 589 N.W.2d 370 (1999). In most circumstances, the party challenging the constitutionality of a statute has the burden of proving that the statute is unconstitutional beyond a reasonable doubt. *Id.* However, because the statute at issue implicates First Amendment rights, the State has the burden of proving beyond a reasonable doubt that the statute is constitutional. *Id.* at 124–25.

## DISCUSSION

¶ 8. The parties agree that, as the Jefferson EMS director, Fisher was a "public official" as that term is used in defamation law. *See Miller v. Minority Bhd. of Fire Prot.*, 158 Wis. 2d 589, 601, 463 N.W.2d 690 (Ct. App. 1990). The parties also agree that Baron had a First Amendment right to disseminate defamatory information about Fisher's performance as a public official if either the information was true or, if the information was false, Baron did not act with "actual malice." *See New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80 (1964) (public official may not recover damages from a defamatory falsehood related to official conduct unless the official proves that the statement was made with "actual malice"—that is, with knowledge that it was false or with reckless disregard of whether it was false or not).

¶ 9. In order to convict Baron of identity theft, the State had to prove that Baron: (1) intentionally used Fisher's personal identifying information; (2) for the purpose of harming Fisher's reputation; (3) by intentionally representing that he was Fisher; (4) without Fisher's consent.[2] *See* WIS JI—CRIMINAL 1458. It is undisputed that Barons purpose in misappropriating Fishers identity was to harm Fishers reputation. Baron

---

[2] WISCONSIN STAT. § 943.201(2), Wisconsin's identity theft statute, provides in relevant part:

> (2) Whoever, for any of the following purposes, intentionally uses or, attempts to use, or possesses with intent to use any personal identifying information or personal identification document of an individual, including a deceased individual, without the authorization or consent of the individual and by representing that he or she is the individual, that he or she is acting with the

argues that because the purpose element of harming an individuals reputation is an element of identity theft that the State must prove, the statute directly punishes him for his intent to defame and indirectly punishes him for his disclosure of defamatory information, in violation of his First Amendment rights. We disagree.

██

¶ 10. The flaw in Baron's logic is that it focuses on the "purpose" element viewed in isolation. Instead, what is criminalized by the identity theft statute is the *whole* act of using someone's identity without their permission *plus* using the identity for one of the enumerated purposes, including harming another's reputation. The statute does not criminalize each of its component parts standing alone. Wisconsin statutes are replete with provisions that criminalize conduct that may otherwise be constitutionally protected, if that conduct is carried out in an unlawful manner. For example, one has a constitutional right to travel, *see United States v. Guest*, 383 U.S. 745, 757–59 (1966), but not to exceed the speed limit when doing so. One also has a constitutional right to keep and bear arms, WIS. CONST. art. I, § 25, but not to use them to commit homicide.

██

¶ 11. A particularly apt example is WIS. STAT. § 946.10(1), which prohibits bribery of public officers. The statute is violated when the defendant gives or

---

authorization or consent of the individual, or that the information or document belongs to him or her is guilty of a Class H felony:

(a) To obtain credit, money, goods, services, employment, or any other thing of value or benefit.

(b) To avoid civil or criminal process or penalty.

(c) To harm the reputation, property, person or estate of the individual.

promises to give something of value for the purpose of influencing the action of a public official on a matter which by law is pending or might come before the official. *See State v. Rosenfeld*, 93 Wis. 2d 325, 335, 286 N.W.2d 596 (1980). There are four elements to this offense:

> The first element requires that (name of officer) was a public officer.
>
> . . . .
>
> The second element requires that the defendant transferred property to (name of officer).
>
> The third element requires that (name of officer) was not authorized to receive the property for the performance of official duties.
>
> The fourth element requires that the defendant intended to influence the conduct of (name of officer) in relation to any matter which by law was pending or might have come before (name of officer) in an official capacity.

Wis JI—Criminal 1721 (footnotes omitted).

¶ 12. The fourth element requires that the defendant intended to engage in conduct that, were it not accompanied by a bribe, would be protected by the First Amendment.[3] As the State observes, under the reasoning urged by Baron, the bribery statute would be unconstitutional because one of the elements that the State would have to prove—that the defendant in-

---

[3] The petition clause of the First Amendment, which guarantees "the right of the people . . . to petition the Government for a redress of grievances," U.S. Const. amend. I, protects the right of individuals to communicate their wishes to public officials. *See McDonald v. Smith*, 472 U.S. 479, 482 (1985).

tended to influence the official action of a public official —constitutes conduct protected by the First Amendment. However, the fact that this otherwise protected conduct is an element of the bribery offense does not necessarily mean that the bribery statute is unconstitutional.

¶ 13. Baron argues that our decision in *State v. Ramirez*, 2001 WI App 158, 246 Wis. 2d 802, 633 N.W.2d 656, supports his interpretation of the statute. In that case, Ramirez had been charged under an older version of the identity theft statute.[4] *Id.*, ¶ 3. He argued that the statute as applied represented an ex post facto law because it did not create a continuing offense. *Id.*, ¶ 8. In the course of concluding that the statute was ambiguous, we observed that although the statute "may be clear enough as to what it criminalizes, it is not so clear as to whether it creates a continuing offense." *Id.*, ¶ 12. Baron argues that by this dicta, we suggested that the statute criminalized each element of the identity theft statute. However, the analysis in *Ramirez* regarding whether a statute creates a recurring and not an isolated offense bears no relationship to the analysis in the present case regarding whether a statute criminalizes the component parts of the offense. We fail to see how *Ramirez* supports Baron's argument.

---

[4] Ramirez was charged pursuant to Wis. Stat. § 943.201(2) (1999–2000), which provided:

> Whoever intentionally uses or attempts to use any personal identifying information or personal identification document of an individual to obtain credit, money, goods, services or anything else of value without the authorization or consent of the individual and by representing that he or she is the individual or is acting with the authorization or consent of the individual is guilty of a Class D felony.

¶ 14. In sum, the identity theft statute neither prohibited Baron from disseminating information about Fisher nor prevented the public from receiving that information. Instead, the statute prohibited Baron from purporting to be Fisher when he sent the emails.

¶ 15. We conclude that the identity theft statute as applied to Baron does not criminalize his constitutionally protected right to defame a public official.[5] Accordingly, we conclude that the State has met its burden of proving beyond a reasonable doubt that the statute is constitutional. For the foregoing reasons, we reverse the circuit court's order dismissing the charge against Baron under WIS. STAT. § 943.201(2)(c).

*By the Court.*—Order reversed.

---

[5] Because we conclude that the identity theft statute does not impose any cognizable burden on political speech, we reject Baron's argument that the statute is subject to strict scrutiny.