STATE of Wisconsin, Plaintiff-Appellant,

v.

Christopher BARON,
Defendant-Respondent-Petitioner.

Supreme Court

*No. 2007AP1289–CR. Oral argument March 6, 2009.
—Decided June 23, 2009.*

(Affirming 2008 WI App 90, 312 Wis. 2d 789, 754 N.W.2d 175.)

## 2009 WI 58

(Also reported in 769 N.W.2d 34.)

Bradley, J., concurs.
Prosser, J., concurs.
Abrahamson, C.J., took no part.

For the defendant-respondent-petitioner there were briefs by *Daniel P. Dunn* and the *Dunn Law Office,* Madison, and oral argument by *Daniel P. Dunn.*

For the plaintiff-appellant the cause was argued by *Jeffrey J. Kassel,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. ANNETTE KINGSLAND ZIEGLER, J. This is a review of a published court of appeals' decision[1] that reversed the decision of the Jefferson County Circuit Court, Randy R. Koschnick, Judge. The circuit court concluded that Wis. Stat. § 943.201(2)(c) (2005–06),[2] which punishes the unauthorized use of another individual's personal identifying information in order to harm the individual's reputation, was unconstitutional as applied to Baron. The State appealed, and the court

---

[1] *State v. Baron,* 2008 WI App 90, 312 Wis. 2d 789, 754 N.W.2d 175.

[2] All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

of appeals reversed the circuit court. Baron petitioned this court for review, which we accepted. We affirm the court of appeals' decision.

¶ 2. This case requires us to decide whether Wis. Stat. § 943.201(2)(c) is unconstitutional as applied to Baron because it violates his First Amendment right to freedom of speech. We conclude that the State has shown beyond a reasonable doubt that § 943.201(2)(c), as applied to Baron, is narrowly tailored to achieve a compelling government interest and therefore does not violate Baron's constitutional right to freedom of speech.

## I. BACKGROUND

¶ 3. Christopher Baron worked as an emergency medical technician for the city of Jefferson under the direction of Mark Fisher who was the director of Jefferson's Emergency Medical Services.

¶ 4. As alleged in the criminal complaint, on August 10, 2006, Baron accessed Mark Fisher's e-mail account by using Fisher's password, which Baron had previously acquired. After accessing Fisher's e-mail account, Baron found a number of e-mails allegedly showing that Fisher was having an extramarital affair. Baron organized the various e-mails into one e-mail message and then sent the message to people in the Jefferson community. The similar subject line of the e-mail message sent was such as: "What's Mark been up to." The e-mails were discussions between Fisher and a woman other than his spouse about their sexual activity and sexual preferences. Even though Baron was the one who organized and sent the e-mails, he did so in a manner that made the e-mails appear to come from Mark Fisher's e-mail account. The day after Baron sent out the e-mails, Fisher committed suicide.

¶ 5. When questioned by authorities, Baron admitted that he had sent the e-mails to get Fisher in trouble. Baron stated that he originally intended to send the e-mails only to Fisher's wife, but he then sent them to other people so they could see that Fisher was not "golden."

¶ 6. Baron was charged as follows: criminal defamation in violation of Wis. Stat. § 942.01(1), which was voluntarily dismissed by the State; two counts of obstructing an officer in violation of Wis. Stat. § 946.41(1); two counts of computer crimes in violation of Wis. Stat. § 943.70(2); and identity theft in violation of Wis. Stat. § 943.201(2)(c).

¶ 7. The only charge at issue in this appeal is the identity theft violation under Wis. Stat. § 943.201(2)(c). With regard to that charge, the complaint provided that Baron "did intentionally use personal identifying information or personal identification documents . . . of Mark G. Fisher to harm the reputation of [Fisher] without [Fisher's] authorization or consent by representing that he was [Fisher] . . . ." The information, which was filed on November 13, 2006, clarified that the personal identifying information that Baron used was Mark Fisher's name.

¶ 8. Baron filed a motion to dismiss the Wis. Stat. § 943.201(2)(c) charge because he argued that the statute was unconstitutional as applied to his conduct. The circuit court granted the motion. The circuit court reasoned that § 943.201(2)(c) contains a defamation element, which interferes with Baron's First Amendment right to free speech, i.e., his First Amendment right to defame a public official. The circuit court concluded that while it was not a clear cut case and there were reasonable arguments on both sides, it had

65

concerns about the chilling effect that would arise by applying this statute to Baron's conduct.

¶ 9. The court of appeals reversed the circuit court's decision. It concluded that Baron's logic was flawed because he focused on the "purpose" element in isolation. The court of appeals stated that "Wisconsin statutes are replete with provisions that criminalize conduct that may otherwise be constitutionally protected, if that conduct is carried out in an unlawful manner."[3] As a result, Baron petitioned this court for review, which we accepted.

## II. STANDARD OF REVIEW

¶ 10. The constitutionality of a statute is a question of law that we review de novo. *State v. Zarnke,* 224 Wis. 2d 116, 124, 589 N.W.2d 370 (1999). A presumption of constitutionality generally exists for a legislative enactment, and as a result, those challenging a statute's constitutionality must show it is unconstitutional beyond a reasonable doubt. *Id.* However, because Wis. Stat. § 943.201(2)(c) implicates First Amendment rights, the State has the burden to prove that the statute is constitutional beyond a reasonable doubt. *Id.* at 124–25. As discussed in ¶¶ 31–32, the State must, therefore, prove that this statute passes either strict or intermediate scrutiny to be deemed constitutional.

---

[3] The court of appeals, relying on an argument made by the State, also reasoned that Wis. Stat. § 943.201(2)(c) was constitutional because if Baron's logic was followed, the bribery statute—Wis. Stat. § 946.10(1)—would be unconstitutional. We decline the opportunity to evaluate the constitutionality of the bribery statute because that issue is not now before the court and it is not determinative in our evaluation of § 943.201(2)(c).

## III. ANALYSIS

¶ 11. Wisconsin Stat. § 943.201, "Unauthorized use of an individual's personal identifying information or documents," provides in relevant part:

> (2) Whoever, for any of the following purposes, intentionally uses, attempts to use, or possesses with intent to use any personal identifying information or personal identification document of an individual, including a deceased individual, without the authorization or consent of the individual and by representing that he or she is the individual, that he or she is acting with the authorization or consent of the individual, or that the information or document belongs to him or her is guilty of a Class H felony:

> . . . .

> (c) To harm the reputation . . . of the individual.[4]

¶ 12. The First Amendment[5] provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

¶ 13. Pursuant to Wis. Stat. § 943.201(2)(c), Baron was charged with one count of identity theft; the

---

[4] We limit our analysis and decision in this case to the portion of Wis. Stat. § 943.201(2)(c) that was charged, i.e., the portion of the statute that prohibits the intent to harm an individual's reputation by the unauthorized use of the individual's personal identifying information.

[5] Section One of the Fourteenth Amendment to the United States Constitution incorporated the First Amendment so that it applies to state governments. *DiMa Corp. v. Town of Hallie*, 185 F.3d 823, 826 (7th Cir. 1999).

State alleged that Baron "did intentionally use personal identifying information or personal identification documents . . . of Mark G. Fisher to harm the reputation of [Fisher] without [Fisher's] authorization or consent by representing that he was [Fisher] . . . ."

¶ 14. In order to determine if Wis. Stat. § 943.201(2)(c), as applied to Baron, violates his First Amendment rights we must address two crucial questions: First, does § 943.201(2)(c) regulate speech[6] or conduct alone? If neither speech nor expressive conduct is being regulated, we need not utilize a First Amendment analysis because the statute does not implicate the First Amendment. Second, if speech or expressive conduct is being regulated, is the statute's regulation content based or content neutral? A content-based statute must survive strict scrutiny whereas a content-neutral statute must survive only intermediate scrutiny. In either event, it is the State's burden to prove that § 943.201(2)(c) is constitutional.

¶ 15. Baron argues that the charge must be dismissed because Wis. Stat. § 943.201(2)(c) is a content-based statute that does not survive strict scrutiny, and in turn, the charge against Baron violates his constitutional right to free speech. In response, the State argues the following three points: First, this statute regulates conduct and not speech; second, if speech is being regulated, the statute is content neutral and survives intermediate scrutiny; and third, if the statute is content based, it survives strict scrutiny. We conclude that § 943.201(2)(c), as applied to the facts of this specific case, is content based and regulates speech in addition

---

[6] Speech includes expressive conduct. *Texas v. Johnson*, 491 U.S. 397, 403–04 (1989).

to conduct,[7] and as a result, the statute should be analyzed under strict scrutiny. However, because, as applied to Baron, the statute is narrowly tailored to achieve a compelling government interest, it is nonetheless constitutional.

A. Speech or conduct

¶ 16. In order to determine if a First Amendment analysis is required, we must first consider whether conduct alone or speech, which includes expressive conduct, is being regulated. *See Texas v. Johnson*, 491 U.S. 397, 403–04 (1989); *State v. Robins*, 2002 WI 65, ¶ 41, 253 Wis. 2d 298, 646 N.W.2d 287. If speech or expressive conduct is being regulated, the First Amendment is implicated.

¶ 17. In *Johnson*, 491 U.S. at 404, the United States Supreme Court considered whether the act of flag desecration was considered speech such that it possessed "sufficient communicative elements to bring the First Amendment into play." The statute at issue, "Desecration of Venerated Object," provides in part: " '(a) A person commits an offense if he intentionally or knowingly desecrates: . . . a state or national flag.' " *Id.*

---

[7] This statute regulates conduct because it regulates the use of another's identity and the distribution of reputation-harming materials. In this case, however, the statute also regulates speech because speech—i.e., the e-mail's content—was used with the intent to harm another's reputation and this is also the basis of Baron's criminal conduct. While Wis. Stat. § 943.201(2)(c) regulates conduct and speech in the case at hand, this may not always be the case. Potentially, conduct alone could constitute identity theft used with the intent to harm the individual's reputation. We do not decide that issue today.

at 400 (citing Texas Penal Code Ann. § 42.09(a)(3) (1989)). The defendant burned the American flag while at a protest demonstration. *Id.* at 399. The Court concluded that his actions were " 'sufficiently imbued with elements of communication' " "to implicate the First Amendment." *Id.* at 406 (citation omitted). As a result, the Court continued with a First Amendment analysis and ultimately concluded that the defendant's conduct was protected by the First Amendment. *Id.* at 407–20.

¶ 18. In *United States v. O'Brien,* 391 U.S. 367, 376 (1968), the Court considered whether the act of destroying a "registration certificate"[8] constituted speech. The statute at issue in *O'Brien* subjected a person to criminal liability if he " 'knowingly destroys (or) knowingly mutilates' a certificate." *Id.* at 375 (citation omitted). The Court noted that the statute "plainly *does not abridge free speech on its face*" and "on its face deals with conduct having no connection with speech." *Id.* The Court stated that "[w]e cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *Id.* at 376. Nonetheless, the Court undertook a First Amendment analysis "on the assumption that the alleged communicative element in O'Brien's conduct [wa]s sufficient to bring into play the First Amendment." *Id.*

----

[8] The Court described the registration certificate as follows: "When a male reaches the age of 18, he is required by the Universal Military Training and Service Act to register with a local draft board. He is assigned a Selective Service number, and within five days he is issued a registration certificate." *United States v. O'Brien,* 391 U.S. 367, 372–73 (1968). "The registration certificate specifies the name of the registrant, the date of registration, and the number and address of the local board with which he is registered." *Id.* at 373.

¶ 19. In *Robins*, 253 Wis. 2d 298, ¶¶ 39–44, this court considered whether the child enticement statute regulated speech or conduct. The statute, Wis. Stat. § 948.07, provides that "[w]hoever, . . . causes or attempts to cause any child who has not attained the age of 18 years to go into any vehicle, building, room or secluded place is guilty of a Class BC felony." *Id.*, ¶ 25 (citing Wis. Stat. § 948.07 (1999–2000)(original emphasis omitted)). The defendant argued that his conviction violated his right to free speech because statements[9] he had made to entice the child were used in his conviction. *Id.*, ¶ 39. This court concluded that the statute did not regulate speech or any variation of speech, such as expression. *Id.*, ¶¶ 41–43. The court, citing to *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949), stated that "[t]he United States Supreme Court has rejected the contention that the First Amendment extends to speech that is incidental to or part of a course of criminal conduct." "It is not 'an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct

---

[9] Robins, who was 46 years old had Internet conversations with a minor that included in part:

WI4kink: So you ever get to Milwaukee?

Benjm13: sometimes withmy [sic] mom

WI4kink: cool so how would we ever meet?

Benjm13: i dont know u can come here if u want

. . .

WI4kink: could just get a room somewhere

Benjm13: oh that would be cool-like a motel

WI4kink: yup

*State v. Robins*, 2002 WI 65, ¶ 6, 253 Wis. 2d 298, 646 N.W.2d 287.

was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.' " *Robins,* 253 Wis. 2d 298, ¶¶ 41–42.

¶ 20. Rather than regulating speech, this court concluded in *Robins* that the child enticement statute regulated conduct. *Id.,* ¶ 43. This court reasoned that Robins' Internet conversations did not constitute the crime of child enticement, but rather, his internet conversations were "circumstantial evidence of his intent to entice a child." *Id.,* ¶ 44. Just because "some of the proof in [a] case consists of internet 'speech' does not mean" the First Amendment has been implicated. *Id.*

¶ 21. In the case at hand, Wis. Stat. § 943.201(2) provides in relevant part: "Whoever, for any of the following purposes[, *e.g.,* to harm the reputation of the individual,] intentionally uses . . . any personal identifying information . . . of the individual . . . without the authorization or consent of the individual and by representing that he or she is the individual, . . . is guilty of a Class H felony."

■

¶ 22. We conclude that, as charged and as applied to the facts of this case, Wis. Stat. § 943.201(2)(c) regulates speech in addition to conduct. The statute punishes a person for using another individual's personal identifying information with the intent to harm that individual's reputation.[10] Under the facts of this case,

___

[10] As provided in Wis JI—Criminal 1458, the elements of Wis. Stat. § 943.201(2) in this case are as follows:

1. The defendant intentionally used personal identifying information of [the] individual.

2. The defendant intentionally used personal identifying information of [the] individual to harm the reputation . . . of the individual.

the statute regulates conduct because it restricts the use of another's identity and the distribution of reputation-harming materials, but speech is also being regulated because the content of the e-mails is critical in order to evidence Baron's intent to use personal identifying information to harm Fisher's reputation. Therefore, this is not a case as in *Robins* where the conduct was merely initiated, evidenced, or carried out in part by speech. Rather, this is a case where the reputation-harming portion of the charge is evidenced by the content of the speech, i.e., the content of the e-mails.

¶ 23. Unlike in *Robins,* where speech was used to show the defendant's intent to entice a child, speech in this case is not used to show the defendant's intent to use another individual's personal identifying information. Absent the e-mails, i.e., speech, which were used with the intent to harm Fisher's reputation, Baron has not committed an element of the crime as alleged. Therefore, just as communicative elements were being regulated in *Johnson* and *O'Brien,* communicative elements are being regulated in this case. Under the statute as charged and applied to the facts of this case, it is the content of the e-mails, i.e., the speech, that evidences the defendant's intent to use personal identifying information to harm Fisher's reputation. Thus, here, speech in addition to conduct is being regulated.[11]

3. The defendant acted without the authorization or consent of [the] individual and knew that [the] individual did not give authorization or consent.

4. The defendant intentionally represented that he was [the] individual.

[11] Arguably, under the current statutory language, if Baron had used Fisher's identity but did not do so in a manner to harm Fisher's reputation, the State would be relegated to charging

¶ 24. The State argues that the prohibited conduct under Wis. Stat. § 943.201(2)(c) is the unauthorized use of an individual's personal identifying information and not speech that is intended to harm another individual's reputation. Therefore, under the State's argument, it is only conduct that is being regulated and not speech, and thus, the First Amendment is not implicated. The State relies on *State v. Derango*, 2000 WI 89, ¶ 17, 236 Wis. 2d 721, 613 N.W.2d 833, and bases its argument on an analogy to the child enticement statute, Wis. Stat. 948.07. The State explains that the child enticement statute criminalizes the act of causing a child to go to a secluded place rather than the underlying sexual misconduct that is set forth in subsections (1) through (6) of the statute.

¶ 25. The child enticement statute applied in *Derango* reads:

> Whoever, with intent to commit any of the following acts, causes or attempts to cause any child who has not attained the age of 18 years to go into any vehicle, building, room or secluded place is guilty of a Class BC felony:
>
> (1) Having sexual contact or sexual intercourse with the child in violation of s. 948.02 or 948.095.
>
> (2) Causing the child to engage in prostitution.

---

another subsection of the identity theft statute or some other statute altogether. While this may not have been what the legislature intended, that is, the legislature may have intended to criminalize the unauthorized use of another's identity, the current statutory language, under subsection (c) of Wis. Stat. § 943.201(2), would seem to allow such use of another individual's identity if that use is not harmful to the reputation of the individual.

(3) Exposing a sex organ to the child or causing the child to expose a sex organ in violation of s. 948.10.

(4) Taking a picture or making an audio recording of the child engaging in sexually explicit conduct.

(5) Causing bodily or mental harm to the child.

(6) Giving or selling to the child a controlled substance or controlled substance analog in violation of ch. 961.

*Id.*, ¶ 16 (citing Wis. Stat. § 948.07 (1995–96)). Wisconsin Stat. § 943.201(2) provides:

Whoever, for any of the following purposes, intentionally uses, attempts to use, or possesses with intent to use any personal identifying information or personal identification document of an individual, including a deceased individual, without the authorization or consent of the individual and by representing that he or she is the individual, that he or she is acting with the authorization or consent of the individual, or that the information or document belongs to him or her is guilty of a Class H felony:

(a) To obtain credit, money, goods, services, employment, or any other thing of value or benefit.

(b) To avoid civil or criminal process or penalty.

(c) To harm the reputation, property, person, or estate of the individual.

¶ 26. According to the State, an analogy to the child enticement statute shows that Wis. Stat. § 943.201(2)(c) prohibits only conduct and does not regulate speech. Under the State's theory, the prohibited conduct is the unauthorized use of another individual's personal identifying information, and therefore, subsections (a) through (c) are simply ways

to carry out that identity theft. The State's argument in this regard is unpersuasive because the subsections of the child enticement statute are not analogous to the subsections of the identity theft statute.

¶ 27. The child enticement statute criminalizes one act, i.e., the act of causing a child to go into a secluded place, but the act has six different possible modes of commission. *Derango,* 236 Wis. 2d 721, ¶¶ 15–25. This court reasoned in *Derango* that multiple acts were not being punished because multiple prohibited acts arise and "warrant separate punishment when [the prohibited acts] are separate in time or are significantly different in nature." *Id.,* ¶ 21. Under subsections (1) through (6) of the child enticement statute, "a defendant might very often possess more than one prohibited intention when enticing a child." *Id.* For example, intent to have sexual intercourse "also encompasses intent to expose or cause the child to expose a sex organ; or, a defendant may entice a child with the dual purpose of giving her drugs *and* exploiting her sexually." *Id.*

¶ 28. Subsections (a) through (c) of the identity theft statute, on the other hand, are significantly different in nature, and thus identity theft can occur in multiple ways.[12] As a result, the prohibited conduct charged includes more than simply the use of Fisher's identity. The way in which the State charged the offense here involved the use of Fisher's identity to distribute communications that were intended to harm the reputation of Fisher. Therefore, this statute prohibits the combination of the use of the individual's personal identifying information with the intent to harm the

---

[12] *Cf. State v. Sauceda,* 168 Wis. 2d 486, 499–500, 485 N.W.2d 1 (1992) (concluding that the sexual assault statute, Wis. Stat. § 940.225, intended multiple punishments and thus prohibits multiple acts).

reputation of that individual. Since in this case, the use of another's personal identifying information was coupled with reputation-harming speech, i.e., the content of the e-mails, we conclude that, in this case, Wis. Stat. § 943.201(2)(c) regulates speech in addition to conduct. As a result, we must proceed further with a First Amendment analysis to determine whether § 943.201(2)(c) is content based or content neutral.

B. Content based or content neutral

¶ 29. The State, relying on the court of appeals' decision in this case, argues that the statute is content neutral because it does not impose any cognizable burden on political speech. Baron, on the other hand, argues that the statute regulates speech based on the ideas or message expressed, and as a result, it is content based.

¶ 30. "At the heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration, and adherence." *Turner Broad. Sys., Inc. v. F.C.C.,* 512 U.S. 622, 641 (1994). "Our political system and cultural life rest upon this ideal." *Id.*

██

¶ 31. As a result, government action that regulates speech is appropriately limited. However, if speech is being regulated, the regulation must survive strict scrutiny if it is content based or intermediate scrutiny if it is content neutral. *Id.* at 642.

██

¶ 32. Determining when the regulation of speech is content based or content neutral can prove difficult. *Id.* As a general rule, laws that "distinguish favored speech from disfavored speech on the basis of the ideas

or views expressed are content based." *Id.* at 643. However, "laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed" are generally content neutral. *Id.* A review of, primarily, United States Supreme Court precedent is helpful in delineating between content-based and content-neutral regulations.

¶ 33. For example, in *Boos v. Barry,* 485 U.S. 312 (1988), the Court concluded that the statute at issue was content based. The governing statute provided that " '[i]t shall be unlawful to display any flag, banner, placard, or device designed or adapted to . . . bring into *public odium any foreign government* . . . within 500 feet of any . . . embassy . . . .' " *Id.* at 316 (emphasis added) (citation omitted). Protestors claimed the statute prohibited them from engaging in "expressive activities" that were critical of the Soviet Union and Nicaragua. *Id.* at 315–16. The Court concluded the statute was content based by reasoning that "[w]hether individuals may picket in front of a foreign embassy depends entirely upon whether their picket signs are critical of the foreign government." *Id.* at 318–19. While favorable speech is permitted, "[o]ne category of speech has been completely prohibited." *Id.* at 319.

¶ 34. In *Burson v. Freeman,* 504 U.S. 191 (1992), the Court concluded that the relevant statute was content based. The governing statute provided that " '[w]ithin . . . 100 feet from the entrances, and the building in which the polling place is located, the *display of campaign posters, signs or other campaign materials, distribution of campaign materials, and solicitation of votes* . . . are prohibited.' " *Id.* at 193–94 (emphasis added) (internal brackets and citation omitted). A campaign official challenged the statute because it "limited her ability to communicate with voters." *Id.*

78

at 194. The Court concluded that the statute was content based. It reasoned that "[w]hether individuals may exercise their free speech rights near polling places depends entirely on whether their speech is related to a political campaign." *Id.* at 197.

¶ 35. On the other hand, in *Members of City Council of City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789 (1984), the Court concluded the ordinance at issue was content neutral. The governing ordinance provided that " '[n]o person shall paint, mark or write on, or post or otherwise affix, any hand-bill or sign to or upon any . . . electric light or power or telephone or telegraph or trolley wire pole . . . .' " *Id.* at 792 n.1 (citation omitted). A group supporting a candidate for public office attached cardboard signs to various utility poles. *Id.* at 792–93. Pursuant to the ordinance, city employees removed the signs, which resulted in the group seeking an injunction against enforcing the ordinance. *Id.* at 793. The Court concluded the ordinance was content neutral. It reasoned that "there is not even a hint of bias or censorship in the City's enactment or enforcement of this ordinance," and "[t]here is no claim that the ordinance was designed to suppress certain ideas that the City finds distasteful." *Id.* at 804. The Court further stated that the "text of the ordinance is neutral—indeed it is silent— concerning any speaker's point of view." *Id.*

¶ 36. Similarly, in *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41 (1986), the Court concluded that the ordinance at issue was content neutral. The applicable ordinance prohibited any " 'adult motion picture theater' from locating within 1,000 feet of any residential zone, single- or multiple-family dwelling, church, or park, and within one mile of any school." *Id.* at 44. The Court acknowledged that the ordinance did "not appear to fit neatly into either the 'content-based' or the

'content-neutral' category," but it ultimately concluded the ordinance was content neutral. *Id.* at 47–48. The Court reasoned that "[t]he ordinance by its terms [wa]s designed to prevent crime, protect the city's retail trade, maintain property values, and generally 'protect and preserve the quality of the city's neighborhoods, commercial districts, and the quality of urban life,' not to suppress the expression of unpopular views." *Id.* at 48 (citing *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 82 n.4 (1976) (brackets omitted). The Court further stated that " 'if the city had been concerned with restricting the message purveyed by adult theaters, it would have tried to close them or restrict their number rather than circumscribe their choice as to location.' " *Id.* (brackets omitted).

¶ 37. In *United States v. Brock*, 863 F. Supp. 851 (E.D. Wis. 1994) *affirmed by United States v. Soderna,* 82 F.3d 1370 (7th Cir. 1996), the applicable statute provided that anyone who "by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services." *Id.* at 856 (citing in relevant part 18 U.S.C. § 248(a)(1)). The district court concluded that the statute was content neutral because it sought to "protect[] ingress to and egress from clinics," *id.* at 861, and it was " 'justified without reference to the content of' any regulated speech." *Id.* at 865 (citation omitted).

¶ 38. In the case at hand, we conclude that Wis. Stat. § 943.201(2)(c) is content based because whether Baron's conduct is prohibited depends entirely upon whether Baron's speech, i.e., the content of the e-mails,

was intended to be reputation-harming speech, which is similar to the content-based provisions in *Boos* and *Burson* where the prohibition was dependent upon whether signs were critical of foreign governments or related to political campaigns. However, we do not decide today whether subsection (c) of Wis. Stat. § 943.201(2) must always be deemed content based under all circumstances as we do not address potential situations where something other than speech is used with the intent to harm another's reputation.

¶ 39. Unlike *Taxpayers for Vincent, Renton,* or *Brock* where the statutes were not designed to suppress certain ideas, this statute under the facts of this case, suppresses reputation-harming speech when it is accompanied by intentionally using another's identity. There is no identity theft in this case unless the trier of fact determines that Baron used Fisher's personal identifying information with the intent to harm Fisher's reputation. Therefore, Baron is prohibited from disseminating speech that is intended to be harmful to Fisher's reputation when that speech occurs through the unauthorized use of Fisher's personal identifying information. As a result, Wis. Stat. § 943.201(2)(c), as applied to Baron, is content based.

¶ 40. The State, in effect, argues that the justification behind the identity theft statute is to punish people for using another individual's identity without consent, and therefore, the statute does not regulate a specific category of speech. While the State may be correct with respect to the application of the identity theft statute to other factual scenarios, under the facts of this case and as charged here, the content of the e-mails was critical to the charge in that Baron must have used Fisher's personal identifying information with the intent to harm Fisher's reputation.

¶ 41. In *Boos,* 485 U.S. at 320, the United States Supreme Court stated that regulations are content neutral when they " 'are justified without reference to the content of the regulated speech.' " (Citation omitted.) For example, "[s]o long as the justifications for regulation have nothing to do with content, i.e., the desire to suppress crime has nothing to do with the actual films being shown inside adult movie theaters," the regulation can be analyzed as content neutral. *Id.*

¶ 42. The district attorney's justification for charging Wis. Stat. § 943.201(2)(c) is based upon the content of the e-mails because that is what is intended to be harmful to Fisher's reputation, and thus, the e-mails, i.e., speech, is necessary proof of an element of the crime. When the Wisconsin legislature included intending to harm another's reputation as an element of Wis. Stat. § 943.201(2)(c), the justification, in part, and under the facts of this case became based on the content of the speech.

¶ 43. We conclude that, under facts of this case, Wis. Stat. § 943.201(2)(c) is content based and regulates speech in addition to conduct. However, this may not be the case under all circumstances given that one may be able to intend to harm the reputation of another without using speech.

¶ 44. Accordingly, the State bears the burden of showing that the statute overcomes strict scrutiny in order to survive Baron's as-applied challenge.

C. Strict scrutiny

■

¶ 45. To survive strict scrutiny, the State has the burden to show that the " 'regulation is necessary to

serve a compelling state interest and that it is narrowly drawn to achieve that end.' " *Boos,* 485 U.S. at 321 (citation omitted).

¶ 46. In *Burson,* 504 U.S. at 193–94, 211, the Court concluded that the applicable statute, which prohibited a person from displaying or distributing campaign literature within 100 feet of a polling station, survived strict scrutiny. The Court asserted that it "has recognized that a State 'indisputably has a compelling interest in preserving the integrity of its election process.' " *Id.* at 199 (citation omitted). As a result, the State had a compelling government interest in preventing voter intimidation and election fraud, which history reveals has been a persistent battle since the country's founding. *Id.* at 200–06. In addition, the Court also concluded that the statute was narrowly drawn to achieve the government's compelling interest. *Id.* at 211. The Court reasoned that the "minor geographic limitation" does not constitute a significant impingement. It asserted that the state of Tennessee has made the constitutionally sound decision that "the[] last 15 seconds before its citizens enter the polling place should be their own, as free from interference as possible." *Id.* at 210.

¶ 47. In contrast, the Court in *Boos,* 485 U.S. at 324, concluded that the statute at issue did not survive strict scrutiny because it was not narrowly tailored. In *Boos,* the statute, which was only applicable to Washington D.C., made it unlawful to display anything within 500 feet of an embassy that brought "into public odium or public disrepute . . . of a foreign government." *Id.* at 316. The Court compared the statute with another provision, which was applicable outside of D.C., that criminalized "willful acts or attempts to 'intimidate, coerce, threaten, or harass a foreign official or an

official guest or obstruct a foreign official in the performance of his duties.' " *Id.* at 324–25 (citing 18 U.S.C. § 112(b)(2)). Based on this comparison, the Court concluded that while the D.C. ordinance "may serve an interest in protecting the dignity of foreign missions, [] it is not narrowly tailored; a less restrictive alternative is readily available." *Id.* at 329.

¶ 48. In the case at hand, Baron concedes that the State has a compelling interest in preventing identity theft.[13] He, however, asserts that the statute is not narrowly tailored to achieve that interest because it eliminates Baron's First Amendment right to defame a public official with true information. The State, in turn, argues that the statute survives strict scrutiny because the statute is narrowly tailored in that it applies only when the defendant intentionally uses an individual's personal information to harm that individual's reputation. We agree with the State and conclude that this is one of those "rare cases" that a government regulation survives strict scrutiny. *See Burson,* 504 U.S. at 211 (stating "we reaffirm that it is the rare case in which we have held that a law survives strict scrutiny"). As applied to Baron, the statute is narrowly tailored to achieve the government's compelling interest.

¶ 49. First, as the State asserts, Wis. Stat. § 943.201(2)(c) has limited applicability. While Baron's First Amendment right to defame a public official is somewhat curtailed by this statute because it impacts whether Baron can use Fisher's identity to dispense the

---

[13] Baron's strict scrutiny argument is limited to asserting that this statute, as applied to Baron, is not narrowly tailored. Baron further states: "We do not contest the fact that the State has a compelling interest in protecting the victims of identity theft."

84

harmful information, the restriction is limited. The statute does not prevent Baron from revealing the reputation-harming information so long as the method chosen does not entail Baron pretending to be Fisher. Just as the statute in *Burson* was limited because it set forth restrictions only within 100 feet from polling places, this identity theft statute is limited in that it applies only when one has stolen another person's identity and proceeds to use that identity with the intent to harm the individual's reputation. Specifically, a defendant, with the intent to harm a person's reputation, must use the individual's personal identifying information without consent and by representing that he or she is the individual. *See* Wis JI—Criminal 1458.

¶ 50. Second, this statute does not chill Baron's right to free speech because he could have intended to harm Fisher's reputation without pretending to be Fisher. For example, Baron could have disseminated the information through Baron's own e-mail account or stood on the street corner and distributed flyers. As a result, it is not the case that this statute punishes Baron for criticizing a public official. Rather, the statute punishes Baron for intentionally using an individual's personal identifying information with the intent to harm the individual's reputation.

¶ 51. Third, unlike in *Boos* where a more narrow statute could have been drafted, we can find no alternative way to draft the statute and still achieve the compelling government interest. A "get out of jail free" card could not have been intended for someone who uses a public official's e-mail account without authorization in order to send reputation-harming e-mails. There are far more civilized methods that are autho-

rized by law to ensure that our officials are appropriately conducting the peoples' business.[14]

¶ 52. Baron argues that for Wis. Stat. § 943.201(2)(c) to be narrowly tailored, it should not criminalize harming a public official's reputation with true information. In other words, Baron essentially argues that this statute eliminates his First Amendment right to defame a public official. Baron relies on *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) and *Bartnicki v. Vopper*, 532 U.S. 514 (2001), to assert that he has a right to disseminate truthful information about a public official regardless of its defamatory nature or his defective method of dissemination. Baron is, in effect, arguing that he has an unlimited right to defame a public official by utilizing any method he chooses so long as it is not done with actual malice. Baron's arguments are unpersuasive for three reasons.

¶ 53. First, while speech that is intended to be harmful to one's reputation is implicated by the statute, the State does not need to prove that the speech was false or done with actual malice, which could be required if Baron was charged with defamation.[15] Under Wis. Stat. § 943.201(2)(c), truthfulness and actual malice are irrelevant considerations given the language chosen by the legislature. The crux of the issue before the court involves the combination of (1) the inappropriate use of the individual's identity that (2) is in-

---

[14] *See generally* Wis. Stat. § 19.35.

[15] If charges are pursuant to Wis. Stat. § 942.01, "Defamation," the State must show the statement was false if a private citizen is being defamed, and if a public official is being defamed, the State must show the statement was made with actual malice pursuant to *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). Otherwise First Amendment protections can arise.

86

tended to harm the reputation of that individual. Therefore, Baron's emphasis on truthfulness or actual malice is irrelevant.

¶ 54. Second, while Baron is correct that he has a First Amendment right to defame a public official under *Sullivan,* 376 U.S. at 279–80, nothing suggests that this right is without boundaries. In fact, the Supreme Court has asserted on a number of occasions that there are limits to the First Amendment. *See, e.g., Taxpayers for Vincent,* 466 U.S. at 804 (citing *Schenck v. United States,* 249 U.S. 47, 52 (1919) (stating "[i]t has been clear since this Court's earliest decisions concerning the freedom of speech that the state may sometimes curtail speech when necessary to advance a significant and legitimate state interest"). We are aware of no case that holds that one has a constitutional right to intentionally use another individual's identity without consent in order to harm that individual's reputation. Therefore, we reject Baron's argument that his First Amendment right is unlimited. So long as Wis. Stat. § 943.201(2)(c) survives the requisite level of scrutiny, it is perfectly valid and no precedent exists to the contrary. While the requisite level of scrutiny may at times be difficult to satisfy, this does not eliminate a government's right to, at times, disallow certain fraudulent methods of disseminating speech.

¶ 55. Third, *Bartnicki* does not support Baron's argument that so long as the information is true, he has an unlimited right to harm a public official's reputation even while pretending to be that official. In *Bartnicki,* 532 U.S. at 518–19, a radio host aired an unfavorable audio clip that he had obtained from a third party who acquired it illegally. While the Court stated that enforcing the provision at issue "implicates the core purposes of the First Amendment because it imposes sanctions

on the publication of truthful information of public concern," *id.* at 533–34, the Court did not set forth an unlimited right to publish such information while intentionally and falsely pretending to be that public official. In fact, the Court stated that "[a]s a general matter, 'state action to punish the publication of truthful information *seldom* can satisfy constitutional standards.' " *Id.* at 527 (emphasis added) (citation omitted). While regulating the dissemination of truthful information may "seldom" be constitutional, it does not mean that such a regulation is never valid.

¶ 56. Moreover, the Court's reasoning for protecting the radio host's First Amendment right in *Bartnicki* was not that he had an unlimited right to publish such information. Rather, the Court concluded that while the government's interest justified prohibiting the "interceptor" from using the illegally obtained information, "it by no means follows that punishing disclosures of lawfully obtained information of public interest by one not involved in the initial illegality is an acceptable means of serving those ends." *Id.* at 529. The Court, therefore, stopped short of setting forth the rule asserted by Baron.

## IV. CONCLUSION

¶ 57. We conclude that the State has shown beyond a reasonable doubt that Wis. Stat. § 943.201(2)(c), as applied to Baron, is narrowly tailored to achieve a compelling government interest and does not violate Baron's constitutional right to freedom of speech.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 58. SHIRLEY S. ABRAHAMSON, C.J., did not participate.

¶ 59. ANN WALSH BRADLEY, J. (*concurring*). I agree with the majority that the statute is constitutional as applied. Majority op., ¶ 57. I write separately, however, because I disagree with the majority that the statute regulates speech as well as conduct. Rather, I believe that the court of appeals got it right—this statute as applied regulates only conduct. Accordingly, I respectfully concur.

¶ 60. The court of appeals noted that "because the statute at issue implicates First Amendment rights, the State has the burden of proving beyond a reasonable doubt that the statute is constitutional." *State v. Baron,* 2008 WI App 90, ¶ 7, 312 Wis. 2d 789, 754 N.W.2d 175. To determine whether the State has met its burden, I begin by examining the elements of the statute.[1]

¶ 61. Under the facts of this case, the State must demonstrate that Baron (1) intentionally used Fisher's personal identifying information (2) for the purpose of harming Fisher's reputation (3) by intentionally representing that he was Fisher (4) without Fisher's consent. It is the second element which implicates First Amendment rights.

¶ 62. The court of appeals concluded that the statute does not criminalize each element of the statute in isolation. *Baron,* 312 Wis. 2d 789, ¶ 10. That is, this statute does not criminalize the intent to harm an

---

[1] Wis. Stat. § 943.201(2)(c) provides:

Whoever, for any of the following purposes, intentionally uses, attempts to use, or possesses with intent to use any personal identifying information . . . without the authorization or consent of the individual and by representing that he or she is the individual . . . is guilty of a Class H felony:

. . . .

(c) To harm the reputation, property, person, or estate of the individual.

89

individual's reputation alone. Rather, it is the whole act—the use of an individual's identity for a prohibited purpose—that is criminalized. The court noted that "Wisconsin statutes are replete with provisions that criminalize conduct that may otherwise be constitutionally protected, if that conduct is carried out in an unlawful manner." *Id.*

¶ 63. One particularly apt example is Wis. Stat. § 946.10(1), which criminalizes bribery of public officers. This statute is violated if the defendant (1) transfers property (2) to a public officer (3) that the officer was not authorized to receive for the performance of official duties, and (4) *the defendant intend[s] to influence the conduct of [the officer] in relation to any matter which by law [is] pending or might have come before [the officer] in an official capacity." See* Wis JI—Criminal 1721 (emphasis supplied).

¶ 64. The court of appeals correctly noted that "[t]he fourth element requires that the defendant intended to engage in conduct that, were it not accompanied by a bribe, would be protected by the First Amendment."[2] *Baron,* 312 Wis. 2d 789, ¶ 12. Similarly, the identity theft statute requires the State to prove that the defendant was motivated by a purpose which, if not accompanied by the theft of the individual's identity, would be protected under the First Amendment.

¶ 65. The court of appeals' decision in this case was cited favorably by the author of a three-volume treatise on the First Amendment. *See* Rodney A. Smolla, *Smolla and Nimmer on Freedom of Speech* § 24:19 (2009). After discussing the court of appeals'

---

[2] The First Amendment guarantees "the right of the people . . . to petition the Government for redress of grievances." U.S. Const. amend. I.

analogy to bribery, the treatise concludes: "The First Amendment cannot plausibly be interpreted to protect identity theft, any more than it protects bribery. . . . If the law does not protect the corrupt influencing of a public official by under-the-table payments, it does not protect the corrupt defaming of public officials by hacking into their computers and stealing their identity and e-mails." *Id.*

¶ 66. We have previously stated, "It is not an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *State v. Robins,* 2002 WI 65, ¶ 42, 253 Wis. 2d 298, 646 N.W.2d 287 (*quoting Giboney v. Empire Storage,* 336 U.S. 490, 502 (1949)). In *Robins,* we discussed whether the use of e-mail constituted speech in the context of the crime of child enticement.

¶ 67. The defendant, who was charged with child enticement, claimed that the statute violated the First Amendment as applied to his attempt to entice a child through internet speech. Intent to entice a child was an element of the offense. We concluded that the statute did not regulate speech and observed that "internet conversations and e-mails . . . do not by themselves constitute the crime of child enticement. Rather, [the] internet conversation and e-mails are circumstantial evidence of his intent to entice a child . . . ." *Id.,* ¶ 44.[3]

---

[3] *See also* Arnold H. Loewy, *Distinguishing Speech from Conduct,* 45 Mercer L. Rev. 621, 622 (1994) ("A significant number of crimes either require or frequently involve communication. Simply giving money to the bribee would be ineffective because she would have no idea of why she was receiving it unless somebody communicated with her. Similarly, perjury

Likewise here, the speech—the content of the e-mail—is evidence of Baron's intent to harm Fisher's reputation.

¶ 68. For the reasons discussed above, I conclude that the State has met its burden to demonstrate that the statute is constitutional. Although the application of strict scrutiny is not warranted in this case because the statute criminalizes conduct rather than speech, I agree with the majority that the statute would withstand a strict scrutiny challenge. *See* majority op., ¶¶ 48–56. Accordingly, I respectfully concur in the majority's opinion.

¶ 69. DAVID T. PROSSER, J. (*concurring*). In 2006 Christopher Baron was charged with violating several statutes, including Wis. Stat. § 943.201(2)(c) (2007–08).[1] After argument, the circuit court dismissed the § 943.201 charge on grounds that the statute was unconstitutional as applied. This decision was subsequently reversed by the court of appeals. *See State v. Baron*, 2008 WI App 90, 312 Wis. 2d 789, 754 N.W.2d 175. I concur in this court's decision to affirm the court of appeals but write separately to offer a different perspective on the legal issues.

¶ 70. Wisconsin created a comprehensive criminal code in the 1953 session of the legislature. Ch. 623, Laws of 1953. As Professor Gordon Baldwin later recalled, one of the first topics of the Legislative Council's criminal code project "was the law relating to crimes against property." Gordon L. Baldwin, *Criminal Misappropriation in Wisconsin-Part I,* 44 Marq. L. Rev. 253, 253 (1960–61). "Crimes involving acts directed against prop-

punishes false statements made under oath. . . . I am aware of no serious argument that any of this 'speech' ought to be constitutionally protected.").

[1] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

erty were divided into three types, crimes involving damage to property, trespass upon property and misappropriation of property." *Id.* "MISAPPROPRIATION" is now one of the four subchapter headings in Chapter *943*, "Crimes Against Property."

¶ 71. Wisconsin Stat. § 943.201 has been located under this heading. The word "misappropriation" is not defined in the statutes and it does not appear in § 943.201, but misappropriation is embedded in the subchapter and is the very heart of the statute in question.

¶ 72. Black's Law Dictionary defines "misappropriation" as "The application of another's property or money *dishonestly* to one's own use." Black's Law Dictionary 1013 (7th ed. 1999) (emphasis added). Wisconsin's theft statute, § 943.20, also is included in the subchapter on misappropriation. Misappropriation may include theft, but it does not have to include theft.

¶ 73. Subsection (1) of § 943.201 contains two terms: (a) "personal identification document" and (b) "personal identifying information." "Personal identifying information" includes basic information such as "[a]n individual's name," "[a]n individual's address," "[a]n individual's telephone number," "[a]n individual's employer or place of employment," and "[t]he maiden name of an individual's mother." Wis. Stat. § 943.201(1)(b)1., 2., 3., 6., 8. Most of this information is not especially confidential and its release is not especially damaging. There are, of course, exceptions, and those exceptions can have profound consequences to the individuals involved.[2]

---

[2] *Cf., e.g., Monfils v. Taylor,* 165 F.3d 511 (7th Cir. 1998), *cert. denied,* 528 U.S. 810 (1999).

¶ 74. Other "personal identifying information," such as "[a]n individual's social security number," "[a]n individual's taxpayer identification number," and "[a]n individual's code or account number," Wis. Stat. § 943.201(1)(b)5., 10., 12.a., frequently present more ominous problems because of their potential "misappropriation" by people attempting to obtain "credit, money, goods, services, employment, or any other thing of value or benefit" without authorization or consent. Wis. Stat. § 943.201(2)(a). This kind of information is closely linked to theft or fraud.

¶ 75. Still another type of "personal identifying information," "[a]n individual's deoxyribonucleic acid profile," Wis. Stat. § 943.201(1)(b)11., is at the core of an individual's personal privacy.

¶ 76. In subsection (1)(a), "Personal identification document" includes "[a] document containing personal identifying information." Wis. Stat. § 943.201(1)(a)1. This description is very broad. It may include an individual's resume, his telephone records, his tax returns, his medical records, and his e-mails. *See* Wis. Stat. § 943.201(1)(a) & (b). Also included in "personal identification documents" are "cards" and "plates," such as credit and debit cards. Wis. Stat. § 943.201(1)(a)2.

¶ 77. In an information age, the legislature is concerned about the unauthorized use, especially the misappropriation, of an individual's personal identifying information. Yet there are limits on the state's authority and ability to control such information. Statutes on this subject must be drafted carefully.

¶ 78. In this case, Baron allegedly accessed Mark Fisher's e-mail account by using Fisher's personal password. Even if he acquired the password lawfully, Baron surely was not authorized to rummage through Fisher's e-mail account, if he did so. Baron then allegedly

collected embarrassing e-mails, "the personal identification documents," in Fisher's account and combined them into a new "personal identification document." He then allegedly transmitted the new "personal identification document," without authorization or consent, to people in the community. He allegedly did this from Fisher's own e-mail account using Fisher's name. He allegedly did this with the intent of harming the reputation of Fisher. If Baron did these things, he misappropriated Fisher's password, he misappropriated Fisher's personal identifying documents, he misappropriated Fisher's e-mail account to send out the documents, and he misappropriated Fisher's name, with the intent to harm Fisher's reputation.

¶ 79. Mark Fisher was a government employee. As such, he was inevitably subject to attacks on his reputation, especially if the attacks were true. But a lawful end did not justify these alleged unlawful means, *especially* the misappropriation of Fisher's name, i.e., the false representation of Fisher as the sender of the widely distributed e-mail.

¶ 80. If a person were to send documents from his own computer under his own name, he would have a defense, on these facts, under this statute. A person who misappropriates another person's name as he attempts to injure the other person does not have such a defense. If a person distributed information anonymously, he also would have a defense under this statute. A person so consumed with malice that he uses another person's name, without authority, to discredit that person, forgoes his defense under the statute.

¶ 81. The First Amendment does not protect a defendant accused of violating the statute in the manner alleged here, because the statute requires the state to prove that the defendant *intentionally misrepre-*

*sented his role as the sender of the message.* The statute punishes intentional misrepresentation, and intentional misrepresentation is not a First Amendment freedom.

¶ 82. "A good name is rather to be chosen than great riches." *Proverbs* 22:1. "A good name is better than precious ointment." *Ecclesiastes* 7:1. This is the wisdom of the ages. Misappropriating a person's name is taking that person's most valuable possession. The legislature understood that this *conduct* is a grave offense and should be punished accordingly.

¶ 83. For the reasons stated, I respectfully concur.